STATE of Wisconsin EX REL. Richard A. FORD, Petitioner,†

v.

Mike HOLM, Warden, Whiteville Correctional Facility, Respondent.

Court of Appeals

*No. 02–1828–W. Oral argument July 23, 2003.—Decided January 29, 2004.*

2004 WI App 22

(Also reported in 676 N.W.2d 500.)

† Petition to review denied 4-20-04.

On behalf of the petitioner, the cause was submitted on the briefs of *Richard A. Ford*, pro se, and *James R.*

*Troupis* and *Steven P. Means* of *Michael, Best & Friedrich, LLP*, Madison, with oral argument by *James R. Troupis*.

On behalf of the respondent, the cause was submitted on the briefs of *Susan M. Crawford* and *James M. Freimuth*, assistant attorneys general, and *Peggy A. Lautenschlager*, attorney general, with oral argument by *James M. Freimuth*.

A nonparty brief was filed by *Patricia K. Flood*, first assistant state public defender, and *Marla J. Stephens*, director, appellate division, for the office of the state public defender, with oral argument by *Marla J. Stephens*, Milwaukee.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. DEININGER, P.J. This case presents a question that has surfaced with some frequency in motion and writ practice before this court: Must an attorney appointed to represent an indigent defendant in post-conviction proceedings move for court permission to withdraw from representation after the attorney concludes that his or her client has agreed to have the attorney "close the file" without filing a postconviction motion, appeal, or no-merit report? A closely related second question is whether appointed postconviction counsel renders ineffective assistance by failing to obtain court permission to withdraw or otherwise seek a judicial determination that the defendant has knowingly waived either the right to appeal or the right to counsel? We conclude that the answer to these questions is no and that, given the supreme court's express declination to so order in *State ex rel. Flores v. State*, 183 Wis. 2d 587, 622–23, 516 N.W.2d 362 (1994), it would be inappropriate for us to require withdrawal

814

motions to be filed in every case such as this. However, because we also conclude that the record before us is insufficient to permit us to determine whether Ford knowingly waived either the right to counsel or to an appeal, we refer the matter to the circuit court for evidentiary proceedings on the question of waiver.

## BACKGROUND

¶ 2.   A person convicted in Wisconsin of committing a crime has a constitutionally guaranteed right to appeal his or her conviction to this court. WIS. CONST. art. I, § 21(1); *State v. Perry*, 136 Wis. 2d 92, 98, 401 N.W.2d 748 (1987). The right to an appeal includes the right that "the appeal be a meaningful one." *Id.* at 99. An indigent defendant is constitutionally entitled to the appointment of counsel at public expense for the purpose of prosecuting his or her "one and only appeal . . . as of right" from a criminal conviction. *Douglas v. California*, 372 U.S. 353, 357–58 (1963); *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 648, 579 N.W.2d 698 (1998).[1] The State Public Defender (SPD) contends, and no party disputes, that criminal defendants in Wisconsin also enjoy a state constitutional right to represent themselves on appeal if they knowingly and

---

[1] The right of an indigent defendant to have counsel provided at public expense for purposes of a first appeal as of right from a state criminal conviction appears to be grounded in the due process clause of the Fourteenth Amendment, rather than in the Sixth Amendment, which applies to "criminal prosecutions." *See Douglas v. California*, 372 U.S. 353, 357–58 (1963); *but see McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 436 (1988) ("If a convicted defendant elects to appeal, he retains the Sixth Amendment right to representation by competent counsel . . . .").

voluntarily make that choice and are competent to do so. It cites WIS. CONST. art. I, § 21(2), as the source of this right and our opinion in *Hlavinka v. Blunt, Ellis, & Loewi, Inc.*, 174 Wis. 2d 381, 394–95, 497 N.W.2d 756 (Ct. App. 1993) as supporting it.

¶ 3. Before summarizing the background facts and procedural posture of this case, we briefly review the provisions for postconviction proceedings in criminal cases as presently set forth in the rules of appellate procedure. If a defendant wishes to pursue "postconviction relief" (i.e., "an appeal or a motion for postconviction relief," WIS. STAT. RULE 809.30(1)(c) (2001–02)[2]), his or her trial counsel must file a notice of the defendant's intent to do so within twenty days of sentencing. RULE 809.30(2)(a)-(b). If, as in this case, the defendant requests representation by the SPD, a series of deadlines are established for accomplishing the following: appointment of postconviction counsel by the SPD, preparation of transcripts and copies of the circuit court record, forwarding the same to the appointed postconviction counsel, and filing of a postconviction motion and/or notice of appeal. RULE 809.30(2)(c)-(k). This court may upon good cause shown enlarge the time periods set for accomplishing these steps, including the filing of a notice of appeal, and we may permit the actions "to be done after the expiration of the prescribed time." WIS. STAT. RULE 809.82(2)(a)-(b).

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. WISCONSIN STAT. RULES 809.30 and 809.32 have been revised since postconviction counsel in this case "closed his file." Our disposition does not rest on any recently revised provisions in the rules, however, and we thus cite and refer in this opinion to the version of the rules contained in the 2001–02 statutes.

¶ 4. After appointed postconviction counsel has reviewed the transcripts and record, he or she must confer with the defendant regarding the defendant's right to appeal, the potential merit or lack thereof in pursuing either a postconviction motion or appeal, and if applicable, the availability of the "no-merit option." *See Flores*, 183 Wis. 2d at 605–07; Wis. Stat. Rule 809.32(1)(b). The Judicial Council Note accompanying the 2001 revisions to Wis. Stat. Rule 809.30 includes the following explanation of appointed postconviction counsel's role and duties:

> It is counsel's duty to decide what issues in a case have merit for an appeal. *Jones v. Barnes*, 463 U.S. 745 (1983). Postconviction counsel is entitled to exercise reasonable professional judgment in winnowing out even arguable issues in favor of others perceived to be stronger. *Id* . . . .
>
> The rules of appellate procedure require that a defendant choose whether to proceed with the assistance of appointed counsel or proceed *pro se. State v. Redmond*, 203 Wis. 2d 13, 552 N.W.2d 115 (Ct. App. 1996). A defendant has neither the right to appointed counsel of choice nor the right to insist that a particular issue be raised. *Oimen v. McCaughtry*, 130 [F.3d] 809 (7th Cir. 1997). "The defendant may terminate appellate counsel's representation and proceed *pro se* or the defendant may allow postconviction relief to continue based on counsel's brief and then seek relief on the grounds of ineffective assistance of appellate counsel." *State v. Debra A.E.*, 188 Wis. 2d 111, 137–39, 523 N.W.2d 727 (1994) . . . .
>
> The state public defender will not appoint successor counsel where a defendant disagrees with the legal conclusions of appointed counsel or when a defendant wants a second opinion as to the merits of an appeal. To

817

do so would unduly delay the disposition of the appeal, and would be contrary to the interests of justice. Wis. Admin. Code s. PD 2.04.

Judicial Council Notes—S.Ct. Order 00–02, § 36, Wis. Stat. Ann. Rule 809.30 (West Supp. July 2001).

¶ 5.   If appointed counsel concludes that an appeal or motion for postconviction relief "would be frivolous and without any arguable merit," after counsel has explained the no-merit procedure under Wis. Stat. Rule 809.32, the client must choose from among three options:

a. To have the attorney file a no-merit report;

b. To have the attorney close the file without an appeal; or

c. To have the attorney close the file and to proceed without an attorney or with another attorney retained at the person's expense.

Rule 809.32(1)(b)1. Counsel must also inform the client that "a no-merit report will be filed if the person either requests a no-merit report or does not consent to have the attorney close the file without further representation by the attorney." Rule 809.32(1)(b)2.

¶ 6.   We turn now to the background facts and procedural posture of the present writ proceeding.

¶ 7.   Richard Ford pled no contest in 1998 to a charge of sexual assault and the Richland County Circuit Court sentenced him to twenty years imprisonment. He filed a notice of intent to seek postconviction relief, and the SPD appointed postconviction counsel for him. After reviewing the record, counsel spoke with Ford by phone and followed up the conversation with a letter to him. In the letter, counsel confirmed that Ford had "directed me to discontinue my representation of you" after obtaining an extension of time for Ford to file

a pro se motion for sentence reduction. The letter also stated counsel's agreement with Ford's decision not to file an arguably meritorious plea withdrawal motion because of the potential for reinstatement of a dismissed charge that could result in exposing Ford to a longer sentence. Finally, counsel explained that he had declined to pursue a sentence reduction motion on Ford's behalf because counsel "saw no arguably meritorious grounds for such a motion."

¶ 8.   We granted Ford's request for additional time to file for postconviction relief, noting in our order that Ford sought the extension "in order to proceed *pro se* on a motion to modify his sentence."[3] Counsel has subsequently informed us that he "closed Mr. Ford's file" after obtaining Ford's consent to that action. Some three years later, Ford wrote to his former counsel asserting that he had disagreed with counsel's opinion that his case lacked arguable merit, and he requested a copy of the no-merit report Ford claimed counsel had agreed to file. Counsel responded to Ford that he did not file a no-merit report "because you did not direct me to do so. You directed me to close your file in this office, and I did so . . . ." In response to an inquiry from Ford, the clerk of this court informed him that nothing had been filed with this court following the order extending his time to file a postconviction motion in the circuit court.

¶ 9.   Ford then filed a petition in this court for a writ of habeas corpus "pursuant to *State v. Knight.*" *See*

---

[3] We issued this order in February 1999, some three years before our decision in *State v. Thornton*, 2002 WI App 294, 259 Wis. 2d 157, 656 N.W.2d 45. Because it appears that we were aware that Ford intended to proceed pro se in lieu of continued representation by appointed counsel, we should have made further inquiries of Ford at that time, as we did in *State v. Marioneaux*, No. 02–1791–CR, unpublished slip op. at ¶¶ 3–4 (WI App Jan. 29, 2004).

*State v. Knight*, 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992) (concluding that "to bring a claim of ineffective assistance of appellate counsel, a defendant must petition the appellate court that heard the appeal for a writ of habeas corpus").[4] In his petition, Ford asserts that he "never requested [his appointed postconviction counsel] to close his appeal" and that he was thus denied "his constitutional right to the effective assistance of counsel on his direct appeal." He requests that we "restore all . . . first appeal rights to petitioner and appoint an effective appellate counsel to litigate the petitioner's appellate claims."[5]

---

[4] The court in *State v. Knight*, 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992), referred to "appellate counsel," as opposed to "postconviction counsel." The terms are sometimes used interchangeably, but where a distinction is drawn, it usually involves whether the representation at issue involved proceedings before this court or the circuit court. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 678–81, 556 N.W.2d 136 (Ct. App. 1996) (holding that claims of ineffective assistance of "postconviction counsel," such as the failure to file a postconviction motion in the trial court for plea withdrawal, must be raised in the trial court rather than by a *Knight* petition to this court). Although the allegation of ineffective assistance of counsel in this case involves the alleged actions or omissions of counsel prior to the filing of an appeal, it is nonetheless properly raised by way of a *Knight* petition in this court. *See State ex rel. Smalley v. Morgan*, 211 Wis. 2d 795, 798–99, 565 N.W.2d 805 (Ct. App. 1997) ("Counsel's failure to commence an appeal under either Rule 809.30 or 809.32, regardless of whether such an appeal had to be preceded by a postconviction motion, can be challenged by a *Knight* petition in this court because counsel's inaction in this court is at issue." Footnote omitted.).

[5] Ford also filed a notice of appeal in the circuit court. After noting that Ford's notice of appeal was filed over three years after the extended deadline, we dismissed the appeal for lack of jurisdiction in the absence of a showing of good cause for a

¶ 10. We requested Ford's former counsel to respond to the petition and to specifically address "whether Ford intelligently and competently waived his right to the assistance of counsel." Counsel's response explained that during his conference with Ford, counsel offered to litigate a plea withdrawal motion that had arguable merit, but that Ford chose to forego that option because of the risk of increased sentence exposure. Counsel also said that he did not offer Ford "a No Merit report because [at the time] the plea withdrawal issue was arguably meritorious." Finally, counsel asserted that "Ford did not waive counsel; he waived his right to have me file an appeal for him," which in counsel's view, citing *Flores*, "relieved me of any obligation to continue my representation of him or to move to withdraw as counsel."

¶ 11. In the State's initial response to Ford's petition, it argued that we should dismiss it because "the documentation provided by Ford conclusively establishes that Ford is not entitled to relief because Ford acquiesced in his attorney's advice to close the file." The State also noted that Ford waited over three years to file his habeas petition and we should deem it barred by laches. After receiving these responses, we obtained pro bono counsel for Ford and, in conjunction with the appeal in *State v. Marioneaux*, No. 02–1791–CR, unpublished slip op. (WI App Jan. 29, 2004), directed the briefing as described below.

---

retroactive enlargement of time. Our dismissal of the attempted appeal has no effect on our separate consideration of Ford's *Knight* petition.

## ANALYSIS

¶ 12.   Notwithstanding the procedural and factual differences between this writ proceeding and the appeal in *Marioneaux,* we conducted joint oral argument on the two cases. In addition to the common question that arises in both cases, they also share a somewhat unusual alignment of parties and positions. Both Marioneaux's appeal and Ford's writ petition were initially filed pro se. Attorney James Troupis answered our request of the Wisconsin State Bar Appellate Law Section to provide pro bono representation in both matters, and we directed him to file in each case "an amicus curiae brief in support of [Marioneaux and Ford]'s position that appointed postconviction counsel erred in closing [their] file[s] without filing a motion to withdraw."

¶ 13.   Because the attorneys appointed to provide postconviction representation in both cases were appointed and employed by the SPD, and because we concluded that these cases raise "issues of statewide importance that are likely to impact" that office, we invited the SPD to file an amicus brief in each case. The SPD accepted our invitation and, along with the State, filed briefs in response to those filed on behalf of Marioneaux and Ford. Additionally, we invited Marioneaux and Ford to file supplemental pro se briefs if they wished, but neither did so.

¶ 14.   Attorney Troupis on behalf of Ford asks that we order his direct appeal rights under WIS. STAT. RULE 809.30 reinstated and that counsel be appointed for him. Additionally, he requests us to "articulate an obligation for future counsel to seek Court approval before foregoing a criminal appeal." The State joins in

the latter request, arguing that "appointed appellate counsel should always be required to file a motion to withdraw and, where necessary, a no-merit brief whenever counsel intends to end representation." The State would not have us reinstate Ford's direct appeal rights at this juncture, however, requesting instead that we "remand for an evidentiary hearing" on the question of knowing and intelligent waiver of counsel.

¶ 15. The State thus largely supports the arguments advanced on behalf of Ford that he was (or may have been) denied effective assistance of postconviction or appellate counsel. The SPD disagrees. It asks us to "find" that Ford "validly waived his right to an appeal" and that "postconviction counsel properly closed the file." The SPD argues in the alternative, if we cannot reach those conclusions on the present record, that the case should "be remanded to the circuit court for fact finding." The SPD also contends that, under *Flores*, we cannot (or at least should not) require appointed counsel to file motions to withdraw on facts such as those before us.

¶ 16. We address in this opinion only the question of whether something happened, or did not happen, after Ford's criminal conviction that should result in his having his rights restored to directly appeal his conviction with the assistance of appointed postconviction counsel. The merits of any underlying claims of error that would invalidate his conviction or sentence have not been briefed and are not presently before us.

¶ 17. It appears from the documents filed in this case that counsel discharged his duties to (1) review and evaluate the circuit court records and transcripts for possibly meritorious grounds for relief from Ford's conviction, and (2) advise Ford regarding his rights and options. The dispute before us has to do with what

happened after counsel presented his client with options on how to proceed. Counsel has informed us that his former client affirmatively chose to forego further postconviction proceedings in this court or the circuit court, at least with representation by appointed counsel. Consequently, appointed counsel "closed the file" without filing a no-merit report or formally moving the court for permission to withdraw from further representation, which, he asserts (as does the SPD) is in accord with the supreme court's holding in *Flores*.

¶ 18. The supreme court concluded in *Flores* that the defendant's postconviction counsel had not rendered ineffective assistance by terminating representation of his client when, after being informed of his right to appeal and of the no-merit option, the client consented to counsel's closing the file without further court action. *Flores*, 183 Wis. 2d at 601. The court pointed out that the failure to file an appeal or no-merit report when a client desires such action would indeed constitute ineffective assistance, but that "there is no reason why a criminal defendant, who has been advised by counsel that an appeal of the defendant's case would have no merit, cannot agree with that assessment of counsel and voluntarily dismiss or forego the appeal." *Id.* at 616.

¶ 19. The court also concluded in *Flores* that "no formalized waiver procedures are required" and that a defendant's waiver of the right to appeal will be "presumed" to have been "made voluntarily, knowingly, and intelligently" where the record establishes that "the defendant 'either suggested, acquiesced in or concurred with the decision' " to forego an appeal. *Id.* at 617 (citation omitted). Moreover, the court expressly declined to impose a requirement that "counsel must always submit a formal motion to withdraw before

closing a case file," concluding that there was no constitutional basis for such a requirement when "both the attorney and the client agree that no appeal should be taken." *Id.* at 622. Finally, the court similarly declined an "invitation to formulate fixed and binding rules" regulating "how withdrawal is accomplished," *id.* at 622–23, although it did offer suggestions as to how counsel might document a client's consent to forego an appeal by employing confirmatory letters to the client which "could be considered strong evidence that counsel's actions were proper." *Id.* at 623.

¶ 20. Recently, in *State v. Thornton*, 2002 WI App 294, 259 Wis. 2d 157, 656 N.W.2d 45, we considered whether a defendant had been denied his constitutional right to counsel in his "matter of right" postconviction proceedings and appeal. Appointed postconviction counsel in *Thornton* moved this court to withdraw after he and his client disagreed regarding the existence of arguably meritorious grounds for appeal and the client rejected the no-merit option. *Id.*, ¶ 3. We granted counsel's request to withdraw. *Id.*, ¶ 4. In deciding Thornton's subsequent pro se appeal, we rejected his claim that his right to counsel on direct appeal had been violated because counsel had provided satisfactory documentation at the time of withdrawal that Thornton "received and acknowledged his understanding of the necessary information to render his waiver knowing and intelligent," and nothing in the record "call[ed] into question the voluntariness of Thornton's decision to proceed pro se or his competence to represent himself." *Id.*, ¶ 24.

¶ 21. Here, of course, appointed counsel did not move to withdraw, and the record does not contain the type of unequivocal, contemporaneous documentation

825

that was present in *Thornton* of a knowing and voluntary decision by Ford to forego postconviction or appellate proceedings represented by appointed counsel. We noted in *Thornton* that WIS. STAT. RULE 809.30(4) now provides a procedure for appointed postconviction counsel to move to withdraw from representation in either the circuit court or this one, the choice of forum depending on whether a notice of appeal has been filed. *Thornton*, 259 Wis. 2d 157, ¶ 3 n.1. When deciding the withdrawal motion, the court must consider whether the defendant has knowingly and voluntarily waived the right to counsel. *Id.*, ¶ 14. Because the question was not before us in *Thornton*, however, we did not address whether "RULE 809.30(4), or other law, requires that a motion to withdraw be filed any time an attorney appointed by the [SPD] terminates his or her postconviction/appellate representation of a defendant." *Id.*, ¶ 14 n.4.

¶ 22. That question is squarely before us now, and counsel for Ford, joined by the State, urges us to impose an affirmative requirement for appointed postconviction counsel to obtain court permission to withdraw from representation before counsel may "close the file." The parties point out that circumstances such as those in this case (i.e., an off-record termination of postconviction representation followed by a pro se request for reinstatement of direct appeal rights and the appointment of counsel) occur with some regularity. They argue that retroactive judicial inquiry into whether a defendant knowingly and voluntarily waived either counsel or an appeal, pursued as here, years after the fact, is problematic at best. Finally, the parties point to several recent federal court decisions granting habeas relief to Wisconsin defendants whose postconviction

counsel terminated representation without obtaining court permission to withdraw.[6]

¶ 23. We agree that counsel's filing of a motion to withdraw, followed by a contemporaneous judicial determination of waiver of counsel, is in many ways preferable to what has transpired in this case. Not only has this court been required to expend considerable judicial resources in attempting to ascertain what happened several years ago when appointed counsel "closed his file," but, given the lack of a proper record on waiver of counsel or the right to appeal, additional circuit court proceedings will now also be required to resolve Ford's present claims. Moreover, the appointed postconviction attorney who in apparent good faith believed he had properly discharged his responsibilities to Ford years ago, has also been required to revisit his long-closed file and respond to our inquiries, and he presumably will soon be called upon to testify in circuit court evidentiary proceedings.

¶ 24. All this could have been avoided had appointed counsel for Ford proceeded as counsel in *Thornton* did, thus assuring the existence of a contemporaneous record and a judicial determination that his client had knowingly and voluntarily waived either the right to postconviction representation or to pursue postcon-

---

[6] *See Betts v. Litscher*, 241 F.3d 594 (7th Cir. 2001); *Jones v. Berge*, 246 F. Supp. 2d 1045 (E.D. Wis. 2003); *Walker v. McCaughtry*, 72 F. Supp. 2d 1025 (E.D. Wis. 1999). A defendant's habeas corpus petition was also granted in *Wisconsin ex rel. Toliver v. McCaughtry*, 72 F. Supp. 2d 960, 968, 979 (1999), even though Toliver's counsel had successfully moved this court to withdraw. The Federal District Court concluded in *Toliver* that we erroneously permitted counsel to withdraw absent a proper record showing that the defendant had knowingly waived his right to counsel. *Id.* at 979.

viction relief. The SPD counters, however, that although circumstances like these do occur, judicial economy is still served by permitting appointed postconviction counsel to terminate representation "off-record." The SPD asserts that "mandating withdrawal motions in every case would . . . unnecessariiy burden the courts to an even greater extent," citing statistics that, of the 2,882 SPD appointed cases closed in 2002, "874 were closed without any court action" after either a determination that no meritorious issues existed or a client chose not to pursue issues having arguable merit.

¶ 25.  In addition, the SPD asserts that requiring withdrawal motions in all cases would infringe on the rights of indigent defendants, raise ethical problems for appointed postconviction counsel,[7] and, most importantly, be contrary to the supreme court's holding in *Flores*. We agree on the last point. Like counsel in this

[7] The SPD maintains that except where a client consents to the filing of a no-merit report, counsel may not ethically disclose to a court that counsel has determined that no arguably meritorious grounds exist for relief from a conviction. It cites SCR 20:1.6 as prohibiting unauthorized disclosure of confidential information "unless and until the client waives confidentiality by claiming that counsel's withdrawal was improper." In the SPD's view, a defendant who elects to proceed pro se in lieu of authorizing a no-merit report should not have his arguments "diminished by appointed counsel advising the court in advance of the filing of the [pro se] brief that there are no issues of arguable merit." Although counsel in *Thornton* did precisely this when he moved to withdraw, we agree with the SPD that "*Thornton* should not be construed to require the filing of a motion to withdraw which explains the reasons that a client has elected to proceed *pro se*." We did not address in *Thornton* the propriety of counsel's inclusion of his assessment of merit in his motion to withdraw inasmuch as the question was not raised in that appeal. Neither did we say in *Thornton*, nor do we here,

case, counsel in *Flores* closed her file with no further court action after assessing the merits of potential postconviction actions, conferring with her client and determining that the client did not wish her to file a no-merit report. *See Flores*, 183 Wis. 2d at 618–19. As we have noted, the supreme court expressly concluded that no formal request to withdraw was required under those circumstances, *id.* at 622, and it refused to "formulate fixed and binding rules in this area at this time," *id.* at 623. Rather, the court rejected the claim of ineffective assistance of appellate counsel on the basis of evidence, presented long after the off-record withdrawal, that established (1) the defendant had been informed of his appeal rights and of the no-merit option, and (2) he had agreed ("albeit reluctantly") with counsel's conclusion that "the appeal had no merit and that the file should be closed." *Id.* at 621.

¶ 26. Similarly, none of the federal decisions the State cites, *see supra* note 6, enunciate a requirement that postconviction counsel obtain court approval to withdraw prior to closing the file. The error cited by the federal court in each case was the lack of evidence in the record to support a determination that the defendant had knowingly and intelligently waived counsel or the right to appeal. *See Betts v. Litscher*, 241 F.3d 594, 596 (7th Cir. 2001) ("There is scant evidence of waiver . . . . [T]he state court did not hold a hearing or use any other procedure to ascertain the truth."); *Jones v. Berge*, 246 F. Supp. 2d 1045, 1058 (E.D. Wis. 2003) ("[T]he court of appeals' findings . . . are clearly insufficient to show a knowing and intelligent waiver . . . . The record does not support the court's assumption."); *Walker v. Mc-*

that if appointed postconviction counsel moves to withdraw, he or she must disclose to the court counsel's assessment of the merits of the client's case.

*Caughtry*, 72 F. Supp. 2d 1025, 1035 (E.D. Wis. 1999) ("[The Wisconsin Court of Appeals] made no factual findings regarding . . . the circumstances surrounding [counsel]'s withdrawal from the case. No state court . . . found that Walker had waived his right to counsel, either."); *Wisconsin ex rel. Toliver v. McCaughtry*, 72 F. Supp. 2d 960, 976 (1999) ("The only evidence before the Wisconsin Court of Appeals when it found waiver . . . is wholly inadequate to support a finding of waiver.").

¶ 27. We close this portion of our analysis by noting why the fact that appointed trial counsel must obtain court permission to withdraw before terminating representation does not necessarily mean that appointed postconviction counsel should be required to do likewise. Indigent defendants have the right under the Sixth Amendment to be represented by publicly appointed counsel "in all criminal prosecutions." The State initiates criminal prosecutions, and unless or until the State or a trial court dismisses all charges, a prosecution will continue even if appointed counsel withdraws. A formal motion to withdraw permits the trial court to inquire into the circumstances and determine if the defendant is knowingly waiving counsel, or if the defendant will be represented in subsequent proceedings by successor counsel, thus permitting the prosecution to continue in conformity with the Sixth Amendment.

¶ 28. In contrast to the preconviction setting, where a defendant does not have a choice whether he or she will be prosecuted, the decision whether to pursue postconviction relief is entirely the defendant's to make. If a defendant does not file a notice of intent to pursue postconviction relief, no court proceedings of any kind are initiated, and, provided the defendant was informed

of his right to appeal, the defendant is presumed to have knowingly and voluntarily waived his right to a direct appeal of his conviction. *See Flores*, 183 Wis. 2d at 617 (citing *Thiesen v. State*, 86 Wis. 2d 562, 568, 273 N.W.2d 314 (1979)). We agree with the State that this presumption may no longer be valid once a defendant has invoked the right of direct appeal by filing a notice of intent to pursue postconviction relief, but this does not mean that a contemporaneous court inquiry is required when the defendant later chooses to forego that right by consenting to having postconviction counsel "close the file." *See Flores*, 183 Wis. 2d at 622.

¶ 29.   No further court proceedings will necessarily occur after a defendant consents to having postconviction counsel close the file. Thus, there is no need for a court to ensure, in every case, that the defendant has knowingly consented to counsel's action. Moreover, because the State's prosecution of the defendant has concluded, the defendant presumably suffers no additional adverse consequences by foregoing an appeal beyond those already imposed as result of his or her conviction and sentence.

¶ 30.   As we have noted, the statistics provided by the SPD suggest that a significant number of defendants choose to forego further court action at some point after postconviction counsel has been appointed. The SPD has not provided, nor do we possess, any empirical data concerning how many defendants who initially consent to having postconviction counsel close the file later seek to have their direct appeal rights restored, but the SPD acknowledges that it "is not unusual" for this to occur. When it does, and a defendant claims to have been misinformed regarding his or her rights or options, or to have not consented to counsel's closing the file without further court action,

an evidentiary hearing may be required to resolve the dispute. *See id.* at 621 ("The nature and sufficiency of either the defendant's acquiescence or disagreement or the actions of counsel will depend upon the particular facts of each case."). It is not until such a claim is made, however, that a potential constitutional violation is raised, and although an after-the-fact waiver inquiry may be cumbersome for all concerned, we see no constitutional imperative for earlier judicial involvement.

¶ 31. We thus conclude that counsel for Ford did not render ineffective assistance simply because he "closed the file" without first obtaining court permission to withdraw or otherwise seeking a contemporaneous judicial determination that his client had knowingly waived either the right to appeal or the right to counsel. We next consider whether the record before us is sufficient for us to determine whether counsel nonetheless performed deficiently by wrongly concluding that his client had knowingly and intelligently waived the right to counsel or the right to an appeal.[8]

¶ 32. Although the SPD's arguments suggest otherwise, a line cannot always be drawn between the right to counsel and the right to appeal, such that a defendant can be said to have waived one but not the other in

---

[8] A prejudice analysis is not required. "[W]henever the ineffective assistance is such as to deprive one *totally* of the right to appeal, the prejudice showing is presumed." *State ex rel. Flores v. State*, 183 Wis. 2d 587, 620, 516 N.W.2d 362 (1994). Similarly, the complete denial of the assistance of counsel, whether at trial or on appeal, is legally presumed to result in prejudice to the defendant. *See Penson v. Ohio*, 488 U.S. 75, 88 (1988).

a given case. If a defendant rejects the no-merit option but intends to seek privately retained counsel or to proceed pro se, he clearly does not intend to waive the right to appeal. If, however, the defendant chooses for other reasons to forego seeking relief from a conviction, on grounds which appointed counsel believes may have merit and is willing to pursue, the defendant is arguably waiving both the right to appeal and the right to counsel as well. We thus apply the precedents discussing the waiver of both rights. We concluded in *Thornton* that a knowing and intelligent waiver of postconviction counsel requires a showing that the defendant was aware (1) of the rights discussed in *Flores* ("to an appeal, to the assistance of counsel for the appeal, and to opt for a no-merit report"); (2) of "the dangers and disadvantages of proceeding pro se"; and (3) that if appointed counsel withdraws from representation, successor counsel would not be appointed to represent the defendant in postconviction proceedings. *Thornton*, 259 Wis. 2d 157, ¶ 21.[9] When the waiver of the right to appeal is at issue, a defendant must be shown to have known of that right and of his or her options, and "it must be apparent that the defendant 'either suggested, acquiesced in or concurred in or with the decision' " to

---

[9] We actually said in *Thornton* that a defendant must be made aware that successor counsel "may" not be appointed. *Thornton*, 259 Wis. 2d 157, ¶ 21. It has become apparent to us, however, that when appointed counsel terminates representation after concluding that an appeal or postconviction motion would lack arguable merit, the SPD *will* not appoint successor counsel. And, unless a defendant prevails on a *Knight* petition such as the one before us now, we will not order the SPD to do so, nor will we make such an appointment ourselves. We thus conclude that defendants should be told that the nonavailability of successor appointed counsel is a certainty, not merely a possibility.

forego an appeal, postconviction motion, or the no-merit option. *Flores*, 183 Wis. 2d at 617 (citation omitted).

¶ 33. Ford's *Knight* petition and counsel's response give some indication that Ford may have been aware of his right to appeal and of the no-merit option, although counsel informs us that "I did not offer a No Merit report because . . . the plea withdrawal issue was arguably meritorious." *See Flores*, 183 Wis. 2d at 606–07 (noting that information about the no-merit option "only becomes necessary when the No Merit option becomes relevant to the defendant's decision . . . [and] is not necessary when the defendant does not desire to pursue an appeal"). It is apparent from counsel's confirmatory letter, however, that counsel was aware of Ford's intention to seek "a time cut" from the trial court, apparently pro se. Ford claims in his *Knight* petition that he "never requested [appointed postconviction counsel] to close his appeal," that "he did not quite understand" a form he claims to have received outlining his options, and that he thought his counsel was filing a no-merit report.

¶ 34. The SPD contends that we may conclude on the present record that appointed counsel "properly" closed Ford's file. It claims that counsel could not file a no-merit report because there was at least one issue with arguable merit (which Ford did not wish to pursue), even though counsel had determined that a sentence modification motion (which Ford apparently *did* wish to pursue) lacked arguable merit. The SPD asserts that there is no procedure for filing a "partial no-merit" report, and argues there was no need for counsel to inform Ford of the risks of proceeding pro se on his sentence modification motion because "the alternative to *pro se* representation on the sentence modification

motion was no modification motion at all." It asks us to conclude that Ford's "belated claim that counsel was to file a no merit report" is insufficient to "rebut the presumptions . . . that counsel provided effective representation and that a valid appeal waiver occurred . . . ." We cannot do so.

¶ 35. Rather, we conclude that we must defer consideration of the "Catch 22" presented by the SPD's argument that, given counsel's assessment, Ford was entitled to neither a no-merit report nor representation by appointed counsel on a motion for postconviction relief. There is a threshold problem that prevents us from reaching the merits of Ford's petition on the record before us. As in *Flores*, the "problem presented in this case [is] essentially evidentiary," in that we do not know for sure "what was said and done" before appointed counsel closed his file. *Flores*, 183 Wis. 2d at 623.

¶ 36. We are not a fact-finding court. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980) (noting that appellate courts cannot make findings of fact if the facts are disputed). Although we may be able to determine that a knowing and voluntary waiver occurred on the basis of uncontested documentation that necessary information was provided to a defendant and the defendant thereafter elected a certain option, *see, e.g., Thornton*, 259 Wis. 2d 157, ¶ 24, the present record contains no unequivocal acknowledgement by Ford that he received all necessary information or chose to have appointed counsel close the file. We are left with only unsworn assertions of counsel in letters to Ford and responses to this court, assertions that are disputed by Ford.

835

¶ 37. Accordingly, we refer the matter to the Richland County Circuit Court for a determination of whether Ford knowingly and voluntarily waived his right to pursue a direct appeal of his conviction or, alternatively, his right to be represented by counsel in postconviction proceedings. The circuit court should conduct an evidentiary hearing and make specific factual findings regarding what information was provided to Ford, what options and advice were provided by counsel and what choices Ford made and communicated to counsel before counsel closed his file. Given the State's contention that Ford's writ petition may be barred by laches, the circuit court should also make findings regarding the reasons Ford waited over three years to file his petition. The court's findings and a transcript of any proceedings on the referred issues shall be filed with this court within ninety days of remand. If the circuit court is unable to comply with this deadline, that fact should be communicated to us, along with a proposed alternate date for filing the necessary findings and transcript.

## CONCLUSION

¶ 38. For the reasons discussed above, we refer to the circuit court for evidentiary proceedings.

*By the Court.*—Cause referred with directions.