STATE of Wisconsin, Plaintiff-Respondent-Cross-Petitioner,

v.

Iran D. EVANS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 02–1869–CR. Oral argument April 7, 2004.—Decided June 29, 2004.*

2004 WI 84

(Also reported in 682 N.W.2d 784.)

193

194

195

196

CROOKS, J., concurs.
ABRAHAMSON, C.J., dissents.
BRADLEY, J., joins Part I of dissent.
ROGGENSACK, J., took no part.

For the defendant-appellant-petitioner there were briefs by *Robert R. Henak* and *Henak Law Office, S.C.,* Milwaukee, and oral argument by *Robert R. Henak.*

For the plaintiff-respondent-cross-petitioner the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

¶ 1. JON P. WILCOX, J. The State and the defendant, Iran D. Evans (Evans), both appeal from an unpublished court of appeals decision, *State v. Evans,* No. 02–1869–CR, unpublished slip op. (Wis. Ct. App. July 24, 2003). The court of appeals affirmed in part and reversed in part an order of the Milwaukee County Circuit Court, Victor Manian, Judge, denying Evans's motion for postconviction relief. Evans appeals from the portion of the court of appeals decision that upheld his conviction for first-degree reckless injury and the State cross-appeals from the portion of the decision reversing Evans's conviction for first-degree attempted homicide.

## I. ISSUES

¶ 2. Evans raises the following issues in his appeal:

1. Whether exclusion of evidence that Evans was

elsewhere at or around the time of the shooting was reversible error and deprived him of his rights to present a defense, due process, and a fair trial?

2. Whether Evans was denied due process by the admission of a confession that he claims was fabricated by the police?

3. Whether quashing Evans's subpoena duces tecum denied him due process and a fair hearing on the issue of whether the confession was fabricated by police?

4. Whether Evans was entitled to postconviction discovery of the victim's medical records, the personnel records of the detective who allegedly fabricated his confession, and prior statements taken by the detective in other cases?

5. Whether the exclusion of testimony from alleged alibi witnesses and evidence that the detective who purportedly fabricated his confession had previously been disciplined for untruthfulness resulted in the real controversy not being tried, thereby justifying reversal in the interest of justice?

6. Whether Evans was denied the effective assistance of trial counsel if this court deems that trial counsel failed to preserve any of the above issues?

¶ 3. The State raises two issues on its cross-appeal:

1. Whether the court of appeals erred in reinstating Evans's direct appeal on a claim of ineffective assistance of appellate counsel four and one-half years after his direct appellate rights had lapsed

and after Evans had already filed two previous postconviction motions?

2. Whether the court of appeals erred in concluding that Evans was entitled to an instruction of recklessly endangering safety as a lesser-included offense of attempted first-degree intentional homicide?

If we agree with the State that the court of appeals erred in reinstating Evans's direct appeal rights, it is unnecessary to reach the numerous other issues presented in this case.

¶ 4. We reaffirm our holding in *State v. Knight,* 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992), that a claim of ineffective assistance of appellate counsel must be brought by a petition for writ of habeas corpus. Utilizing Wis. Stat. § (Rule) 809.82(2),[1] a procedural mechanism, as a substitute for a *Knight* petition for habeas corpus, so as to avoid making a substantive determination that a defendant was denied the effective assistance of appellate counsel constitutes an erroneous exercise of discretion. Therefore, we hold that the court of appeals erroneously exercised its discretion when it reinstated Evans's direct appeal rights by granting his § (Rule) 809.82(2) motion to extend the time for filing his direct appeal because the basis of the motion was a claim of ineffective assistance of appellate counsel. As such, we

---

[1] All references to the Wisconsin Statutes are to the 2000–01 version unless otherwise noted. Several of the relevant statutes in this case have undergone revisions over the course of the lengthy procedural history of this case. Unless otherwise noted, those changes are not material to the determination of the matter before us.

do not reach the other issues presented in this case. Evans remains free to file a *Knight* petition with the court of appeals.

## II. FACTUAL BACKGROUND
## AND PROCEDURAL POSTURE

¶ 5. On June 26, 1996, a jury found Evans guilty of one count first-degree reckless injury and one count attempted first-degree intentional homicide, arising from an incident where Evans allegedly shot an acquaintance on the street multiple times at close range. The circuit court sentenced Evans to 35 years in prison on the attempted first-degree homicide charge and 10 years in prison on the first-degree reckless injury charge, the sentences to run concurrently. On August 2, 1996, Evans's trial counsel filed a notice of intent to pursue postconviction relief.

¶ 6. On August 27, 1996, Assistant State Public Defender Patricia Flood was appointed to represent Evans for purposes of postconviction proceedings. According to an affidavit later filed by Attorney Flood, after discussing the case with Evans, a disagreement arose concerning the challenges to be raised on appeal. Evans informed Attorney Flood that he wanted her to close his file, as he wished to obtain private counsel to represent him. On February 27, 1997, Attorney Flood successfully sought an extension of time for filing a postconviction motion or notice of appeal. Thereafter, on March 10, 1997, Attorney Flood sent Evans a letter advising him of the consequences of closing his file. The contents of the letter are as follows:

> When we spoke, I told you that I was concerned that if I closed your case before you actually hired an attorney, and it turned out that you were unable to hire

200

one, you would be left without representation. I did not want to send you the transcripts directly, because I would need them in the event that your plans to hire an attorney did not work out and I did not want to take the chance that something would happen to the transcripts.

You have made it clear that you want your transcripts and that you want me to close your case now. I am doing so, but advise you again that if you are unsuccessful in obtaining private counsel, you will be on your own because the public defender will not appoint a different attorney to represent you.

Your transcripts and the court of appeals order extending your 809.30 deadline for filing a notice of appeal or post-conviction motion are enclosed.

¶ 7. Attorney Flood did not file a motion to withdraw as counsel for Evans. On May 6, 1997, and June 23, 1997, the court of appeals granted Evans's pro se motions to extend the time for filing a postconviction motion or notice of appeal. The court of appeals noted in its June 23, 1997, order that no further extensions would be granted. Evans did not obtain private counsel, and his direct appeal rights lapsed.

¶ 8. On April 15, 1999, Evans filed a motion for postconviction relief pursuant to Wis. Stat. § 974.06, seeking a new trial. In his motion, Evans alleged that his trial counsel was ineffective and that the State withheld crucial exculpatory information. Evans also alleged that the circuit court erroneously exercised its discretion by: a) failing to submit a lesser-included offense instruction to the jury; b) excluding the testimony of alleged alibi witnesses; and c) admitting Evans's confession, which he alleged was fabricated by

the police. By order dated April 19, 1999, the Honorable Dennis P. Moroney denied Evans's motion.

¶ 9. On May 26, 1999, five weeks after the circuit court had already ruled on his previous motion, Evans filed a "supplemental" motion for postconviction relief wherein he again sought a new trial. In his supplemental motion, Evans alleged that the circuit court failed to provide an alibi instruction to the jury. By order dated May 27, 1999, the circuit court denied Evans's "supplemental" motion for postconviction relief on the ground that Evans's previous § 974.06 motion had already been adjudicated over a month earlier and he could have and should have raised the issue in his previous motion. The court's order stated that any further § 974.06 motions would be denied on the basis of *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994).[2]

¶ 10. The court of appeals subsequently affirmed the circuit court on all grounds in an unpublished per curiam opinion. *State v. Evans*, No. 99–1147, unpublished slip op. (Wis. Ct. App. October 3, 2000). The court of appeals held that any deficient performance of Evans's trial counsel was not prejudicial because there was substantial evidence supporting his guilt. *Id.*, ¶ 10. The court of appeals also held that no exculpatory evidence was withheld by the State and that even if such evidence was withheld, there was no violation of *Brady v. Maryland*, 373 U.S. 83 (1963), because the result of the proceeding would have been the same.

---

[2] Absent a showing of a "sufficient reason," "[a]ll grounds for relief under sec. 974.06 must be raised in a petitioner's original, supplemental, or amended motion. . . . [I]f the defendant's grounds for relief have been finally adjudicated, waived or not raised in a prior postconviction motion, they may not become the basis for a sec. 974.06 motion." *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181, 517 N.W.2d 157 (1994).

*Evans*, No. 99–1147, unpublished slip op., ¶¶ 11–14. Moreover, the court of appeals held that the circuit court did not err in making certain evidentiary rulings and therefore did not violate Evans's constitutional rights. *Id.*, ¶¶ 16–23. Finally, the court of appeals rejected Evans's claims regarding jury instructions for a lesser-included offense and alibi, noting that a motion for postconviction relief under § 974.06 may raise only constitutional and jurisdictional issues. *Id.*, ¶¶ 24–26. The court of appeals also noted Evans's "supplemental" § 974.06 motion was actually his second § 974.06 motion because the circuit court had already denied his first § 974.06 motion when he filed his "supplemental" motion. *Id.*, ¶ 26. The court explained that the first time Evans raised his alibi instruction claim was in his second § 974.06 motion, and he provided no reason why that claim was not raised in the previous motion. *Id.* This court denied Evans's petition for review on November 6, 2000.

¶ 11. Over two years later, Evans obtained private counsel and sought to have his *direct appeal* rights reinstated by filing a motion under § (Rule) 809.82(2)[3] to extend the time for filing a postconviction motion or

---

[3] Wisconsin Stat. § (Rule) 809.82(2) provides, in pertinent part:

(a) Except as provided in this subsection, the court upon its own motion or upon good cause shown by motion, may enlarge or reduce the time prescribed by these rules or court order for doing any act, or waive or permit an act to be done after the expiration of the prescribed time.

(b) Notwithstanding the provisions of par. (a), the time for filing a notice of appeal or cross-appeal of a final judgment or order other than in an appeal under s. 809.30 or 809.32 may not be enlarged.

notice of appeal.[4] The court of appeals received his motion on March 11, 2002. In his motion, Evans alleged that he did not waive his right to appellate counsel and that he was denied the right to counsel on appeal. Specifically, Evans's motion alleged that following his two pro se motions to extend the time to file his direct appeal, he was in segregation and had insufficient access to required legal materials. He also alleged that Attorney Flood failed to advise him of the dangers of proceeding pro se on appeal, failed to advise him that he still had the right to her services if he was unable to obtain private counsel, and failed to file a motion to withdraw.

¶ 12. Evans attached to his motion an affidavit by Attorney Flood, wherein she stated that she withdrew as counsel in response to Evans's demand that she do so. Attorney Flood noted that she filed a motion to extend the time for him to file his notice of appeal and warned him that the State Public Defender (SPD) would not appoint different counsel to represent him should he be unsuccessful in obtaining private counsel. She stated that she did not recall whether she advised Evans of the dangers of proceeding pro se but that there was no reason to do so because Evans had informed her

---

[4] The dissent fails to appreciate the significance of the procedural facts in this case. Dissent, ¶ 70. As discussed *infra,* Evans did not file his contingent habeas petition until November, 2002, almost 8 months after the court of appeals summarily granted his § (Rule) 809.82(2) motion on March 13, 2002. Thus, Evans's contingent habeas petition was filed long after his direct appellate rights were reinstated and *after* the circuit court had rejected his § 974.02 motion. Indeed, Evans filed his contingent petition for habeas corpus only after the State questioned the propriety of reinstating his direct appeal rights via a § (Rule) 809.82(2) motion.

he was obtaining private counsel. Finally, Attorney Flood stated that she never filed a formal motion to withdraw as appellate counsel.

¶ 13. Two days after receiving Evans's motion, without seeking a response from the State, a one-judge panel of the court of appeals granted Evans's motion to extend the time to file his direct appeal in a two-sentence order. The order simply acknowledged that Evans had filed such a motion and that the motion was granted. Although the State was served with a copy of the motion, it failed to move for reconsideration after the order was granted within the 11–day time frame set forth in Wis. Stat. § (Rule) 809.14(2).

¶ 14. On May 10, 2002, Evans, by his attorney, moved the circuit court, Victor Manian, Judge, pursuant to Wis. Stat. §§ 974.02 and (Rule) 809.30(2)(h), for the entry of an order vacating his convictions and granting him a new trial. Evans alleged that the circuit court erred during his trial by refusing to permit his alibi witnesses to testify, failing to suppress his confession, and by failing to give a lesser-included offense instruction. Evans further alleged that his trial counsel was deficient for not objecting to these errors. Finally, Evans sought an order for postconviction discovery allowing him access to the victim's medical records and written statements from other criminal cases taken by the detective who allegedly fabricated Evans's confession, as well as the detective's personnel file. By written decisions and order dated May 29, 2002, the circuit court denied Evans's motion for postconviction relief and postconviction discovery.

¶ 15. After the circuit court denied Evans's motion, he obtained, via an open records request, evidence that the detective who allegedly fabricated his confession had been disciplined in 1985 for untruthfulness.

On August 12, 2002, Evans filed a motion for reconsideration of that portion of his motion for postconviction relief seeking postconviction discovery of the detective's personnel file and written statements. On August 16, 2002, the circuit court denied Evans's motion for reconsideration. Evans appealed his conviction, the circuit court's order denying his § 974.02 motion for postconviction relief, and the circuit court order denying his motion for reconsideration.

¶ 16. The State filed a motion in the court of appeals for clarification of its March 13, 2002, order,[5] questioning whether the court of appeals reinstated Evans's direct appeal rights. The same one-judge panel that granted Evans's motion to extend time denied the State's motion for clarification, stating that Evans's extension motion did seek reinstatement of his direct appeal rights. However, the order noted that the State was free to argue on appeal that the court of appeals was without authority to reinstate Evans's direct appeal rights in the absence of a petition for habeas corpus. Evans also filed a contingent petition for writ of habeas corpus asking for his direct appellate rights to be reinstated retroactive to the date counsel filed his postconviction motion on May 10, 2002. The court of appeals denied Evans's petition as premature on November 6, 2002.

¶ 17. In its July 24, 2003, unpublished decision, the court of appeals concluded that Evans's extension

---

[5] At oral argument before this court, the State explained that its usual practice is not to oppose extension motions because most are filed before the time to file an appeal has expired or shortly thereafter. The State claims that it did not realize until later that Evans was seeking an extension to file his direct appeal four and one-half years after his direct appellate rights had lapsed and six years after he was convicted.

motion was properly granted. The court reasoned that even if Evans should have proceeded via a *Knight* petition,[6] there was no substantive difference between a habeas petition and the procedure actually utilized. *Evans*, No. 02–1869, unpublished slip op., ¶ 4. Also, the court stated that while Evans was proceeding pro se he "was apparently not aware" that he had a claim for ineffective assistance of appellate counsel and there was no reason why he "should have been aware of the claim." *Id.*, ¶ 5.[7] Finally, the court of appeals noted the State's failure to object when it granted Evans's extension motion. *Id.*

¶ 18. Regarding Evans's substantive claims, the court of appeals reversed Evans's conviction for attempted first-degree homicide after concluding the circuit court erred in failing to submit to the jury a lesser-included offense instruction. *Id.*, ¶¶ 7–15. The court of appeals rejected Evans's remaining claims of error and did not disturb his conviction for first-degree reckless injury, although it remanded for resentencing. *Id.*, ¶¶ 16–25.

## III. STANDARD OF REVIEW

¶ 19. We review the court of appeals' decision to grant or deny a § (Rule) 809.82(2) motion to extend

---

[6] In *State v. Knight,* 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992), this court held that "to bring a claim of ineffective assistance of appellate counsel, a defendant must petition the appellate court . . . for a writ of habeas corpus."

[7] As the dissent recognizes, dissent, ¶ 73, the court of appeals never actually addressed the merits of the substantive issue of whether Evans's appellate counsel was ineffective. It merely speculated as to whether Evans may have known he had such a claim.

time under an erroneous exercise of discretion standard. *State ex rel. Breier v. Milwaukee County Cir. Ct.*, 91 Wis. 2d 833, 835–36, 284 N.W.2d 102 (1979). *See also State v. Argiz,* 101 Wis. 2d 546, 561, 305 N.W.2d 124 (1981)(concluding that the court of appeals did not abuse its discretion in refusing to allow late appeal). "[T]he exercise of discretion is not the equivalent of unfettered decision-making." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). To be upheld on appeal, a discretionary act "must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *Id.* Moreover, "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Id.*

¶ 20. Therefore, a court erroneously exercises its discretion when it fails to set forth its reasoning and the facts of record do not support its decision. *McCleary v. State,* 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971). Further, a court erroneously exercises its discretion when it proceeds under a mistaken view of the law. *Cook v. Cook,* 208 Wis. 2d 166, 171–72, 560 N.W.2d 246 (1997). This court has held that it is an erroneous exercise of discretion for the court of appeals to utilize § (Rule) 809.82(2) to shortcut procedures established for granting writs when there is no apparent reason for doing so. *Breier,* 91 Wis. 2d at 835–36. Conversely, the court of appeals does not erroneously exercise its discretion by refusing to allow a defendant to pursue a late appeal when the defendant fails to establish any exceptional circumstances that would warrant such action. *Argiz,* 101 Wis. 2d at 561.

## IV. ANALYSIS

¶ 21. The State argues that the court of appeals erred in reinstating Evans's direct appeal rights. First, the State notes that Evans's motion to extend time was premised on a claim of ineffective assistance of counsel on direct appeal and argues such a claim is properly addressed by a habeas petition under *Knight.* The State asserts that a § (Rule) 809.82(2) motion filed after the time for appeal has expired cannot be based upon a claim of ineffective assistance of appellate counsel for a number of reasons. The State contends that in many cases a claim of ineffective assistance of appellate counsel will require fact-finding, a process generally not required for determining motions to extend time. The State notes that the first prong of the test for ineffective assistance of counsel will usually require testimony from appellate counsel as to why no appeal was filed in order to determine whether appellate counsel was deficient. Further, because a habeas petition is subject to the defense of laches, the State asserts that testimony will usually be required from the defendant as to why he waited a lengthy period of time before bringing a habeas motion. In addition, the State notes that a habeas petition will better put the State on notice that the defendant is making a claim of ineffective assistance of counsel. The State also suggests that Evans waived his right to appellate counsel by directing Attorney Flood to close his file, not objecting when she did so, and not informing the court of appeals that he failed to secure private representation.

¶ 22. Second, the State asserts that regardless of whether a habeas petition was the proper vehicle for bringing Evans's claims, his current appeal should be

barred as a successive collateral postconviction action. The State notes that Wisconsin has a strong policy of barring successive postconviction motions and habeas petitions absent extraordinary circumstances and contends that utilizing § (Rule) 809.82(2) to reinstate a direct appeal years after it has expired and after the defendant has previously filed other postconviction motions defeats this policy.

¶ 23. Third, the State argues that Evans should be deemed to have waived any claim of ineffective assistance of appellate counsel because he brought two previous postconviction motions where he said nothing about his lack of direct appeal. Further, the State contends that Evans has not given any reason as to why it took him over four years to first assert the claim. Finally, the State asks us to institute a pleading requirement for § (Rule) 809.82(2) motions that would force defendants to explain why they did not have a direct appeal, how they discovered the basis for this allegation, and explain any delay in bringing the claim.

¶ 24. Evans responds by first arguing that the State waived any argument that the court of appeals erred in granting his § (Rule) 809.82(2) motion by not objecting within the 11–day time frame provided by Wis. Stat. § (Rule) 809.14(2) and first raising its argument in its motion for clarification five months later. Second, Evans argues that the court of appeals did not err in granting his § (Rule) 809.82(2) motion because a *Knight* petition is not the exclusive method for seeking an extension of time for direct appeal based on ineffective assistance of appellate counsel. Evans contends that § (Rule) 809.82(2) specifically allows a court to extend the time for filing a direct appeal after the time for filing such an appeal has passed and does not

contain an exception for requests based on ineffective assistance of appellate counsel.

¶ 25. Further, Evans contends that in *Knight,* this court was concerned over the forum in which an ineffective assistance of appellate counsel claim was heard, not the procedural mechanism by which the claim was brought. Evans argues that a § (Rule) 809.82(2) motion provides adequate opportunity for the State to raise any legal or factual disputes relating to the underlying ineffective assistance of counsel claim and that, in any event, factual disputes are rare. In those cases where there is a legitimate factual dispute, Evans argues that the court of appeals may refer the matter to the circuit court for an evidentiary hearing.

¶ 26. Moreover, Evans argues that any procedural default on his behalf should be imputed to the State under *Coleman v. Thompson,* 501 U.S. 722, 754 (1991). Evans asserts that there is no question he was deprived of effective assistance of counsel on his direct appeal because counsel abandoned him and such conduct is a per se violation of the right to counsel. Evans contends that this violation deprived him of the information necessary for him to know that he had a viable claim for ineffective assistance of counsel. Finally, Evans claims that he did not waive his right to appellate counsel during his direct appeal and that the doctrine of laches does not bar his claim of ineffective assistance of appellate counsel.

¶ 27. In order to address the procedural issue raised in this appeal and give context to the unique procedural posture of this case, it is necessary to briefly summarize the rules of appellate procedure for postconviction proceedings. A criminal defendant has a right to postconviction relief that encompasses both bringing a postconviction motion and an appeal. Wis. Stat.

211

§§ 973.18 & (Rule) 809.30.[8] The circuit court judge must inform the defendant at sentencing of these rights and the right to the assistance of the SPD if he is indigent. Wis. Stat. § 973.18.

¶ 28. A defendant's first option for postconviction relief is a motion under Wis. Stat. § 974.02. The procedures and timelines governing postconviction relief for felony cases are set forth in § (Rule) 809.30. *See* Wis. Stat. § 974.02(1). Wisconsin Stat. § (Rule) 809.30(2) sets forth a series of procedures and timelines with which a defendant must comply in filing a notice of intent to pursue postconviction relief and securing representation by the SPD. It is the responsibility of trial counsel to file the notice of intent to pursue postconviction relief. Wis. Stat. § 973.18(5). Section (Rule) 809.82(2) allows the court, upon its own motion or upon good cause shown, to enlarge or reduce any time period, including the time for filing an appeal under § (Rule) 809.30.

¶ 29. A § 974.02 motion for postconviction relief may be filed in place of or prior to a notice of appeal. *See* Wis. Stat. § (Rule) 809.30(2)(h), (j). However, while no postconviction motion is needed prior to an appeal if the grounds are sufficiency of the evidence or issues previously raised, a postconviction motion is required prior to an appeal for issues not previously raised. *See* Wis. Stat. §§ 974.02(2) & (Rule) 809.30(2)(h). If the circuit

---

[8] For the purposes of chapter 809, "postconviction relief" is defined as "an appeal or a motion for postconviction relief in a criminal case, other than an appeal, motion, or petition under ss.302.113(7m), 302.113(9g), 973.19, 973.195, 974.06 or 974.07(2)." Wis. Stat. § (Rule) 809.30(1)(c). However, a motion to collaterally attack a conviction under § 974.06 is commonly referred to as a postconviction motion. *See, e.g., Escalona-Naranjo,* 185 Wis. 2d at 181.

court denies a defendant's § 974.02 motion, the defendant may appeal to the court of appeals.

¶ 30. During postconviction proceedings, a defendant must choose between being represented by the SPD, proceeding pro se, or securing private representation. *State v. Redmond,* 203 Wis. 2d 13, 19, 552 N.W.2d 115 (Ct. App. 1996). A defendant does not have the right to hybrid representation on appeal. *State v. Debra A.E.,* 188 Wis. 2d 111, 138, 523 N.W.2d 727 (1994). The right to counsel on direct appeal is a fundamental right and includes the guarantee of effective assistance of counsel on appeal. *State ex rel. Flores v. State,* 183 Wis. 2d 587, 604–05 & n.3, 516 N.W.2d 362 (1994). While a defendant has the right to counsel on direct appeal, he does not have the right to counsel of his choice, or the right to insist that particular issues be raised. *Oimen v. McCaughtry,* 130 F.3d 809, 811 (7th Cir. 1997). It is the duty of appellate counsel to decide what issues have merit for appeal. *Jones v. Barnes,* 463 U.S. 745, 751–53 (1983). If appellate counsel concludes that an appeal would be frivolous, he may file a no merit report after following the procedures outlined in Wis. Stat. § (Rule) 809.32 and seek to withdraw. *Flores,* 183 Wis. 2d at 605. A defendant has a right to be informed of the right to a no merit report and that he has a right to insist that such report be filed if he disagrees with counsel's opinion that the appeal would have no merit. *Id.* at 607, 610.[9] The defendant also has the option, if he agrees with counsel that the appeal is without merit, to waive the right to appeal. *Id.* at 616.

---

[9] The present case does not appear to involve the no merit report procedure.

213

¶ 31. If, however, the defendant merely disagrees with counsel as to which issues will be raised, he has the choice of terminating counsel's representation and proceeding *pro se* or proceeding with counsel and later seeking relief on the grounds of ineffective assistance of appellate counsel. *Debra A.E.,* 188 Wis. 2d at 138. If a defendant elects the former option and desires to proceed pro se, the defendant must be provided clear warnings regarding the dangers of self-representation and waiving the right to appellate counsel before appellate counsel may withdraw. *State v. Thornton,* 2002 WI App 294, ¶ 21, 259 Wis. 2d 157, 656 N.W.2d 45.[10] Moreover,

> [t]he state public defender will not appoint successor counsel where a defendant disagrees with the legal conclusions of appointed counsel or when a defendant wants a second opinion as to the merits of an appeal. To do so would unduly delay the disposition of the appeal, and would be contrary to the interests of justice.

Judicial Council Committee Note, 2001, Rule 809.30, Stats. (citing Wis. Admin Code § PD 2.04).

¶ 32. Once a defendant's direct appeal rights are exhausted or the time for filing an appeal has expired, the defendant may collaterally attack his conviction via

---

[10] Wisconsin Stat. § (Rule) 809.30(4) establishes the procedures appellate counsel must follow in making a motion to withdraw. This provision was not in effect when Attorney Flood closed Evans's case in 1996. *See* Supreme Court Order No. 00–02, effective July 1, 2001, 2001 WI 39, 242 Wis. 2d xxviii, xlvii (creating § (Rule) 809.30(4)). The Judicial Council Note to the rule explains that "[t]his rule does not change existing law concerning when a withdrawal motion is necessary." Judicial Council Committee Note, 2001, Rule 809.30, Stats.

a motion under Wis. Stat. § 974.06. *Peterson v. State,* 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972). An appeal under § 974.06 is a civil proceeding, Wis. Stat. §§ 974.06(6) & (Rule) 809.30(2)(L), and it is essentially the statutory substitute for a petition for writ of habeas corpus. *Escalona-Naranjo,* 185 Wis. 2d at 176; *Peterson,* 54 Wis. 2d at 381.[11] There is no constitutional right to counsel on a § 974.06 motion. *Peterson,* 54 Wis. 2d at 381–82; *State v. Alston,* 92 Wis. 2d 893, 288 N.W.2d 866 (Ct. App. 1979).

¶ 33. A defendant may only raise constitutional or jurisdictional issues in a § 974.06 motion; thus, a § 974.06 motion may not be used to raise challenges to sufficiency of the evidence, jury instructions, evidentiary rulings, or procedural matters. *Peterson,* 54 Wis. 2d at 381. *See also State v. Nicholson,* 148 Wis. 2d 353, 369, 435 N.W.2d 298 (Ct. App. 1988) (noting that the circuit court erred in failing to submit a lesser-included offense instruction, but ruling that this claim could not be brought under § 974.06). In addition, under Wis. Stat. § 974.06(4), issues that were raised or could have been raised during the direct appeal or in a previous § 974.06 motion may not be brought in a subsequent § 974.06 motion absent a showing of a "sufficient reason." *Escalona-Naranjo,* 185 Wis. 2d at 181–84. This rule is designed to ensure finality in prisoner litigation and to "compel[] a prisoner to raise all grounds regarding postconviction relief in his or her original, supplemental or amended motion. Successive motions and

---

[11] However, in most instances, a motion under Wis. Stat. § 974.06 is a necessary prerequisite to a petition for writ of habeas corpus. *See* Wis. Stat. § 974.06(8). A § 974.06 motion must be made in the court that imposed the sentence. Wis. Stat. § 974.06(1).

215

appeals, which all could have been brought at the same time, run counter to the design and purpose of the legislation." *Id.* at 185. The circuit court's order on a § 974.06 motion may be appealed to the court of appeals. Wis. Stat. § 974.06(7).

¶ 34. While a § 974.06 motion may be the statutory equivalent of a petition for writ of habeas corpus, this court has held that it cannot be used to bring a claim of ineffective assistance of appellate counsel. *Knight,* 168 Wis. 2d at 522. In *Knight,* we addressed the question of "the appropriate vehicle of relief for a criminal defendant who asserts that his or her appellate counsel provided ineffective assistance." *Id.* at 512. This court held that "to bring a claim of ineffective assistance of appellate counsel, a defendant must petition the appellate court that heard the appeal for a writ of habeas corpus." *Id.* at 522.[12] Further, because a defendant should petition the court of appeals for a writ of

---

[12] Subsequently, the court of appeals has held that a *Knight* petition is not proper when the defendant claims ineffective assistance of postconviction counsel. *State ex rel. Rothering v. McCaughtry,* 205 Wis. 2d 675, 683–84, 556 N.W.2d 136 (Ct. App. 1996). In *Rothering,* the defendant brought a *Knight* petition after his direct appeal, alleging that his appellate counsel was ineffective for failing to raise certain claims on appeal. *Id.* at 676–77. Noting that these claims required a postconviction motion to be filed in the circuit court before being heard on appeal, the court of appeals concluded that these issues were waived because no such postconviction motion was filed. *Id.* at 677–78. Thus, the court of appeals concluded that the defendant was really attempting to challenge the performance of his postconviction counsel. *Id.* at 679. After distinguishing *Knight, id.* at 679–80, 683, the court of appeals concluded that "a claim of ineffective assistance of postconviction counsel should be raised in the trial court either by a petition for habeas corpus or a motion under § 974.06, Stats." *Id.* at 681.

habeas corpus when pursuing a claim of ineffective assistance of appellate counsel, we expressly overruled a case that sanctioned a "contrary procedure." *Id.* at 520 n.6.

¶ 35. Similar to § 974.06 motions, "a defendant may file only one habeas petition under *Knight* unless that defendant can adequately explain why all issues relating to the representation of appellate counsel were not raised in the first petition." *State ex rel. Schmidt v. Cooke,* 180 Wis. 2d 187, 190, 509 N.W.2d 96 (Ct. App. 1993). However, unlike § 974.06 motions, a habeas petition under *Knight* is subject to the doctrine of laches because a petition for habeas corpus seeks an equitable remedy. *State ex rel. Smalley v. Morgan,* 211 Wis. 2d 795, 800, 565 N.W.2d 805 (Ct. App. 1997).

¶ 36. We now turn to the merits of the procedural issue presented in this case. The issue in this case is whether the court of appeals erroneously exercised its discretion in granting Evans's § (Rule) 809.82(2) motion wherein he sought an extension of time to file his direct appeal four and one-half years after the time for doing so had expired, on the ground that he was denied the effective assistance of appellate counsel. First, we reject Evans's argument that the State waived any challenge to this issue. Although it is true that the State did not move for reconsideration of the court of appeals'

However, the court of appeals has held that a *Knight* petition is the appropriate procedure to use when counsel altogether fails to commence an appeal under § (Rule) 809.30 or 809.32, "regardless of whether such an appeal had to be preceded by a postconviction motion[.]" *State ex rel. Smalley v. Morgan,* 211 Wis. 2d 795, 798–99, 565 N.W.2d 805 (Ct. App. 1997).

217

order granting Evans's motion to extend time within the 11–day time frame provided by § (Rule) 809.14(2), in its September 3, 2002, response to the State's motion for clarification, the court of appeals specifically stated that the State was free to argue on appeal that the court of appeals was without the authority to reinstate Evans's direct appeal rights in the absence of a *Knight* petition. Evans has not challenged this portion of the court of appeals' order. Therefore, we conclude that the issue has not been waived and is properly before us.

¶ 37. Evans argues that a *Knight* petition is not the exclusive method of raising a claim of ineffective assistance of appellate counsel. Further, he contends that even if he were required to file a *Knight* petition, the end result would be the same as the present posture of the case and that it would be a waste of time to go back and file a *Knight* petition. While Evans is correct that § (Rule) 809.82(2) does not contain any exception for enlarging the time for appeal when the basis of the extension is ineffective assistance of appellate counsel, Evans's argument overlooks the fundamental difference between a § (Rule) 809.82(2) motion and a *Knight* petition.[13] As demonstrated below, the nature of

---

[13] The issue presented is not whether, under the language of § (Rule) 809.82, a defendant can bring a motion to extend the time for filing his direct appeal based on a claim of ineffective assistance of appellate counsel or whether the express language of § (Rule) 809.82 gives an appellate court the power to grant such a motion. There is no doubt that under § (Rule) 809.82, the court of appeals has the power to grant a motion to extend time for any number of reasons that may constitute "good cause." Our decision today does not purport to carve out an exception to the power granted to the court of appeals under § (Rule) 809.82. *See* dissent, ¶ 82. Thus, the issue here does not involve a matter of statutory interpretation; rather, the issue is whether the

§ (Rule) 809.82(2) and the procedures utilized in granting such motions are not congruent with the amount of time and type of analysis necessary to properly adjudicate the types of substantive issues presented in a habeas petition. In addition, utilizing § (Rule) 809.82(2) in such a manner runs contrary to our decision in *Knight.*

¶ 38. A § (Rule) 809.82(2) motion is a procedural mechanism for enlarging the time to accomplish any act prescribed by judicial order or the rules of appellate procedure. However, a § (Rule) 809.82(2) motion does not resolve the merits of an underlying claim or appeal; rather, it allows for time to be extended to present a claim or appeal. Section (Rule) 809.82(2) permits the court of appeals to enlarge or reduce the time for doing such an act for good cause shown or upon its own motion. The rule specifically allows a court to permit an act to be done after the time for doing so has expired. Wis. Stat. § (Rule) 809.82(a). One secondary authority has noted that "[t]he court of appeals has a generally lenient policy about granting extensions that will enable a criminal defendant to prosecute an appeal." Michael S. Heffernan, et al., *Appellate Practice and Procedure in Wisconsin* § 19.29 (3d. ed. 2003). As happened here, § (Rule) 809.82(2) motions can be resolved

court of appeals erroneously exercises its discretion when it grants a § (Rule) 809.82 motion based on a claim of ineffective assistance of appellate counsel so as to circumvent the procedure we promulgated in *Knight* for resolving such claims. As discussed *infra,* discretion must be exercised "consonant with the purposes of the established law." *State ex rel. Plotkin v. DHSS,* 63 Wis. 2d 535, 545, 217 N.W.2d 641 (1974). We merely determine that if, in exercising its power under § (Rule) 809.82, the court of appeals contravenes our mandate in *Knight,* such exercise of power constitutes an erroneous exercise of discretion.

fairly quickly; Evans's § (Rule) 809.82(2) motion was decided only two days after it was filed. In addition, a § (Rule) 809.82(2) motion may be granted without a response from an adverse party. *See* Wis. Stat. § (Rule) 809.14(2) ("A motion for a procedural order may be acted upon without a response to the motion."). Further, under § (Rule) 809.14(2), an adverse party has a mere 11 days from the service of the order to move for reconsideration. Wis. Stat. § (Rule) 809.14(2). In addition, the State noted at oral argument that it generally does not oppose extension motions because most are filed before the time for filing an appeal has run or shortly thereafter.

¶ 39. In contrast, a *Knight* petition is a substantive motion challenging the lawfulness of an individual's imprisonment based on the denial of effective assistance of counsel on direct appeal:

> The purpose of a writ of habeas corpus is to require the petitioner to be brought before the court to determine the lawfulness of his or her imprisonment. Habeas corpus is intended as a method of vindicating a person's right to personal liberty by freeing the person from illegal restraint.

Patrick J. Devitt & L. Michael Tobin, *Wisconsin Criminal Defense Manual* § 9–31 (2003 ed.). In *Knight,* this court stated unequivocally that "to bring a claim of ineffective assistance of appellate counsel, a defendant *must* petition the appellate court that heard the appeal for a writ of habeas corpus." *Knight,* 168 Wis. 2d at 522 (emphasis added).[14] Further, we expressly disavowed

---

[14] A *Knight* petition, rather than a § 974.06 motion under *Rothering,* would have been appropriate in this case. *See Smalley,* 211 Wis. 2d at 798–99 (clarifying that a *Knight* petition is the proper procedure for challenging appellate counsel's

language from the court of appeals' decision in *State v. Flores,* 158 Wis. 2d 636, 462 N.W.2d 899 (Ct. App. 1990), which allowed such a claim to be made via a § 974.06 motion: "Because we conclude that the defendant should pursue an ineffective assistance of appellate counsel claim by petitioning the appellate court for a writ of habeas corpus, we expressly overrule any language in *Flores* that might sanction a contrary procedure." *Knight,* 168 Wis. 2d at 520 n.6.

¶ 40. We reasoned that a habeas petition was the appropriate vehicle to bring a claim of ineffective assistance of appellate counsel because, while § 974.06 could theoretically be used to indirectly remedy the consequences of ineffective assistance of appellate counsel, the legislature did not intend "the circuit courts to utilize sec. 974.06 in this oblique manner." *Id.* at 519. We noted that habeas corpus is an equitable doctrine that would allow the court of appeals to tailor a remedy for the specific facts of each case; whereas § 974.06 provided only limited remedies. *Id.* at 519–21. Further, we explained that a claim of ineffective assistance of appellate counsel involves questions of law that are within the court of appeals' expertise and authority to decide. *Id.* at 521. Moreover, noting that fact-finding is often necessary to evaluate claims of ineffective assistance of appellate counsel, we stated that the court of appeals would be able to submit the matter to a referee or circuit court should fact-finding be necessary. *Id.* We concluded that the appellate court could best judge the conduct of counsel on such a claim. *Id.* at 518–19.

---

failure to commence an appeal altogether, regardless of whether a postconviction motion needed to be filed in the circuit court).

¶ 41. The essential problem in this case is that because Evans utilized a § (Rule) 809.82(2) motion rather than a *Knight* petition, and because the court of appeals granted the motion ex parte two days later, there has never been a judicial determination as to whether Evans's appellate counsel was actually ineffective. While Evans argues that the court of appeals' decision to extend the time for filing his direct appeal necessarily involved a determination that his appellate counsel was ineffective, the court of appeals' order consisted of only two sentences and never addressed the underlying merits of Evans's claim; it simply acknowledged that Evans filed a motion to extend time and granted the motion. In addition, while the court of appeals did address whether Evans was required to file a *Knight* petition in its decision on Evans's "direct appeal," it never addressed the State's argument that Evans had waived the right to appellate counsel. In other words, there has never been a determination that Evans was denied the effective assistance of appellate counsel. As will be demonstrated below, due to the factual and legal complexities of this case, it is not a foregone conclusion that Evans would have prevailed on a *Knight* petition.

¶ 42. As noted in *Knight,* 168 Wis. 2d at 521, a claim of ineffective assistance of appellate counsel involves legal issues within the purview of the court of appeals. Under the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), a defendant claiming ineffective assistance of counsel must demonstrate both that counsel's performance was deficient and that he was prejudiced by this deficient performance. While a complete denial of appellate counsel obviates the need to prove prejudice—prejudice is

presumed in this instance—a defendant is not relieved of the obligation of proving deficient performance. *Flores,* 183 Wis. 2d at 620.

¶ 43. Here, there was never a judicial determination that Evans's appellate counsel was deficient. A determination that counsel's performance was deficient is often a fact-intensive inquiry:

> "[A] court deciding an actual ineffective assistance claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct .... The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."

*Id.* at 621 (quoting *State v. Pitsch,* 124 Wis. 2d 628, 636–37, 369 N.W.2d 711 (1985)). The precise communications between Evans and his attorney would be essential in determining whether Attorney Flood provided ineffective assistance and whether Evans waived his right to counsel on direct appeal.[15]

¶ 44. In addition, a determination of whether Evans's appellate counsel was ineffective would involve the resolution of several important and novel questions of law. First, the State suggests that Evans waived his right to appellate counsel. In order to conclude that a

---

[15] Regardless of whether the court of appeals *may* appoint a referee to hold an evidentiary hearing for a § (Rule) 809.82(2) motion, dissent, ¶ 84, the fact remains that the court of appeals did not do so here. The court of appeals simply accepted the allegations in Evans's motion as true without determining their factual accuracy or legal sufficiency in regard to whether his appellate counsel was ineffective.

defendant has waived his right to counsel on direct appeal, a court must find that the defendant was aware:

> (1) of the *Flores* rights (to an appeal, to the assistance of counsel for the appeal, and to opt for a no-merit report); (2) of the dangers and disadvantages of proceeding pro se; and (3) of the possibility that if appointed counsel is permitted to withdraw, successor counsel may not be appointed to represent the defendant in the appeal.

*Thornton,* 259 Wis. 2d 157, ¶ 21 (footnote omitted).

¶ 45. In his motion to extend time, Evans alleged that Attorney Flood never informed him of the dangers of proceeding pro se. However, in *Thornton,* the defendant affirmatively sought to proceed pro se. *See id.,* ¶¶ 3–4. Evans, in contrast, did not seek to proceed pro se. Rather, in her affidavit attached to Evans's motion to extend time, Attorney Flood indicated that after a disagreement between the two regarding issues to be raised on appeal, Evans informed her that he wanted her to close his file so he could obtain private counsel. Attorney Flood's letter to Evans indicates that she did not want to close his file until he actually obtained private representation and that she warned him that if he was unsuccessful in obtaining private counsel, the SPD would not appoint another attorney and he would be forced to proceed pro se. Her letter also demonstrates that she closed his file only at his continued insistence. In her affidavit, Attorney Flood stated that she could not recall advising Evans of the dangers and consequences of proceeding pro se, but because he indicated that he was obtaining private counsel "there would have been no reason for me to advise him regarding the dangers of proceeding without counsel."

¶ 46. Most claims of waiver of appellate counsel involve defendants who indicate they wish to proceed

pro se after a disagreement with appointed counsel. *See, e.g., Oimen,* 130 F.3d at 810–11; *Thornton,* 259 Wis. 2d 157, ¶ 3. Thus, the facts of this case present novel legal questions not present in *Thornton* or *Oimen,* namely: 1) whether a defendant waives his right to appellate counsel when he directs his appointed counsel to close his file and intends to secure private representation; 2) whether appointed counsel is required to inform the defendant of the dangers of proceeding pro se when he intends to seek private counsel, such that failure to do so constitutes deficient performance; 3) whether appointed counsel renders ineffective assistance by closing the client's file before he secures private representation, when she did so only at the client's demand and after informing him of the dangers of closing the file before the defendant obtained new counsel.

¶ 47. Another issue that would be raised by the facts of this case is whether Attorney Flood was required to file a motion to withdraw before closing Evans's file. In *Flores,* this court specifically declined to adopt a per se rule that counsel must always file a motion to withdraw before closing a case file. *Flores,* 183 Wis. 2d at 622–23. Although not in existence at the time Attorney Flood closed Evans's case file, Wis. Stat. § (Rule) 809.30(4) currently sets forth the procedures appellate counsel must follow in making a motion to withdraw.

¶ 48. While one secondary authority suggests that this rule makes a formal withdrawal motion mandatory, *see* Heffernan, et al., *Appellate Practice and Procedure in Wisconsin* at § 19.4, the Judicial Council Committee Note to § (Rule) 809.30 specifically states that § (Rule) 809.30(4) was not intended to change when a motion to withdraw is necessary. Judicial Council Committee Note, 2001, Rule 809.30, Stats. Indeed, the court of

appeals has recently held, in spite of § (Rule) 809.30(4), that when a defendant agreed to have counsel close the file, "counsel . . . did not render ineffective assistance simply because he 'closed the file' without first obtaining court permission to withdraw or otherwise seeking a contemporaneous judicial determination that his client had knowingly waived either the right to appeal or the right to counsel." *State ex rel. Ford v. Holm,* 2004 WI App 22, ¶ 31, 269 Wis. 2d 810, 676 N.W.2d 500.

¶ 49. Additionally, even if it is determined that appellate counsel was deficient, a claim of ineffective assistance of appellate counsel is subject to the defense of laches: "Where the delay on the petitioner's part was unreasonable and the State suffers actual prejudice from the delay in its ability to respond to the petition, dismissal on the grounds of laches may be warranted." *Smalley,* 211 Wis. 2d at 800. Similar to the case at bar, the defendant in *Smalley* agreed to have his file closed, and his appointed counsel withdrew. *Id.* at 800–01. The defendant filed a petition for habeas corpus over seven years later. In determining that his claim was barred by laches, the court of appeals reasoned:

> The petition states no grounds for waiting until 1996 to seek the intervention of this or any court for purposes of obtaining a direct appeal from a 1988 conviction. The petition does not indicate that Smalley was under any disability which precluded him from learning that counsel did not bring an appeal or complaining about the same to a court prior to 1996. Smalley does not contend that counsel ignored inquiries from him, led him to believe that appellate or postconviction proceedings were underway, or failed to advise him of his options on appeal, including his right to request a no merit report. Smalley does not allege that he instructed counsel to pursue an appeal or file a no merit report.

*Smalley,* 211 Wis. 2d at 801–02(citations omitted).

¶ 50. The court of appeals in the case at bar apparently considered that determining whether good cause had been shown for an extension of time is equivalent to a laches analysis, noting that a consideration of unreasonable delay was "inherent" in its order to extend time. *Evans,* No. 02–1869–CR, unpublished slip op., ¶ 4. However, the two-sentence order granting Evans's extension motion failed to even mention Evans's delay. While the court of appeals, in its decision on his "direct appeal," did engage in post hoc speculation as to why Evans might not have brought his claim earlier, it failed to substantiate these claims in the record. Also, the court of appeals failed to discuss the fact that Evans had filed two motions to extend the time for his direct appeal and had filed two § 974.06 motions. In addition, even if the court of appeals had discussed Evans's delay in bringing the extension motion in its order granting the motion, unreasonable delay is only part of the laches analysis; it must also be determined whether such delay prejudiced the State. *Smalley,* 211 Wis. 2d at 800. Thus, contrary to the court of appeals, we do not believe that the decision to grant a § (Rule) 809.82(2) motion is the equivalent of addressing the doctrine of laches in the context of a *Knight* petition.[16]

¶ 51. By raising these questions, we do not decide whether Evans's appellate counsel was deficient or whether his claim would have been barred by laches;

[16] The court of appeals' decision to grant Evans's motion to extend the time for filing his direct appeal over four years after his direct appeal rights lapsed is also perplexing in light of its earlier order granting Evans's second pro se motion to extend time, in which it noted that no further extensions would be granted.

rather, we raise these questions merely to demonstrate that there was never a judicial determination as to whether Evans's appellate counsel was deficient and that it is not a foregone conclusion that Evans would have prevailed on a *Knight* petition. More importantly, the foregoing discussion illustrates why § (Rule) 809.82 is ill suited to adjudicate a claim of ineffective assistance of counsel.

¶ 52. Because a determination of whether counsel was ineffective involves an inquiry into whether counsel's actions were reasonable under the case specific facts, it often is necessary for the court of appeals to appoint a referee to hold a fact-finding hearing in order to take testimony from the attorney and the defendant. *Flores,* 183 Wis. 2d at 621; *Knight,* 168 Wis. 2d at 521. In addition, claims of ineffective assistance of counsel often raise complex and novel legal issues. In *Knight,* 168 Wis. 2d at 521, we noted that legal questions such as these are "within the appellate court's expertise and authority to decide de novo." However, § (Rule) 809.82(2) is not a mechanism for adjudicating substantive legal issues; it is a procedural mechanism allowing for time to be extended upon a showing of good cause.

¶ 53. Moreover, due to the legal issues involved and the possible need for fact-finding, a *Knight* petition may take a substantial amount of time to resolve. *See Knight,* 168 Wis. 2d at 521 (noting that the resolution of a habeas petition may take longer than a § 974.06 motion). However, as indicated by the fact that Evans's § (Rule) 809.82(2) motion was decided only two days after it was filed, § (Rule) 809.82(2) motions can be

resolved fairly quickly.[17] A § (Rule) 809.82(2) motion may be granted without a response from an adverse party and an adverse party has a mere 11 days from the service of the order to move for reconsideration. Wis. Stat. § (Rule) 809.14(2). Where, as here, the order did not indicate the reason why the motion was granted, an adverse party may not be aware that the basis of the motion was a claim of ineffective assistance of appellate counsel. Even if the party was so aware, a mere 11 days would not provide a sufficient amount of time to gather the relevant facts, research the pertinent issues, and present the court of appeals with an adversarial brief.[18]

¶ 54. We noted in *Knight* that habeas corpus is an equitable remedy that allows the court of appeals to tailor a remedy for the particular facts of each case. *Knight,* 168 Wis. 2d at 520–21. Section (Rule) 809.82 does not allow such flexibility; it allows only for the extension of time. Finally, another reason exists why it is improper for the court of appeals to grant a § (Rule) 809.82(2) motion when a defendant alleges ineffective assistance of appellate counsel. Most, if not all, of Evans's substantive claims on this appeal had been previously raised and dismissed in his prior § 974.06 motions and appeal. By granting Evans's § (Rule) 809.82 motion, the court of appeals essentially nullified Evans's previous postconviction motions and appeal. Without ever properly determining that his appellate counsel was ineffective, the court of appeals allowed Evans to utilize § (Rule) 809.82(2) to avoid the

---

[17] At oral argument, Evans's counsel stated that the reason he brought a § (Rule) 809.82 motion instead of a *Knight* petition was that § (Rule) 809.82 motions are generally decided in a much quicker fashion than habeas petitions.

[18] Generally, a responding party has 30 days to file a brief in the court of appeals. *See* Wis. Stat. § (Rule) 809.19(3).

*Escalona-Naranjo* rule and raise issues previously adjudicated. Allowing such a practice would render our decision in *Escalona-Naranjo* meaningless. Thus, the nature of § (Rule) 809.82(2) and the procedures utilized in granting a § (Rule) 809.82(2) motion make such motions inappropriate substitutes for *Knight* petitions.

¶ 55. In *Knight,* we determined that a claim of ineffective assistance of appellate counsel could not be brought under a § 974.06 motion because, while a circuit court could indirectly remedy the denial of effective assistance of appellate counsel through a § 974.06 motion, we did not believe the legislature "intended the circuit courts to utilize sec. 974.06 in this oblique manner." *Knight,* 168 Wis. 2d at 519. Likewise, we do not believe that our mandate in *Knight* is compatible with the court of appeals' utilization of § (Rule) 809.82(2) to reinstate a defendant's direct appeal rights when the "good cause" alleged is denial of effective assistance of appellate counsel because § (Rule) 809.82 does not allow for the proper adjudication of such a claim. The concerns that led us to reject the use of a § 974.06 motion in *Knight* are even more poignant here because, unlike § (Rule) 809.82, § 974.06 was designed to adjudicate the substantive constitutional issues. *See* Wis. Stat. § 974.06(1). Section (Rule) 809.82(2) is a procedural mechanism. Unlike a petition for a writ of habeas corpus, it is not designed to "vindicate[] a person's right to personal liberty by freeing the person from illegal restraint." Patrick J. Devitt & L. Michael Tobin, *Wisconsin Criminal Defense Manual* § 9–31 (2003 ed.).

¶ 56. Further, allowing the procedure the court of appeals utilized would eviscerate our decision in *Knight.* Because "[i]t is most likely that the Rule 809.30 deadlines will have expired before a defendant com-

plains to [the court of appeals] that counsel abandoned him or her[,]" *Smalley,* 211 Wis. 2d at 799, most defendants claiming ineffective assistance of appellate counsel could proceed under § (Rule) 809.82(2). Given that the court of appeals has a generally lenient policy in granting § (Rule) 809.82(2) motions, the court of appeals could routinely allow defendants to circumvent *Knight* by granting § (Rule) 809.82(2) motions without properly adjudicating the underlying claim of ineffective assistance of appellate counsel. Indeed, given the volume of the appellate caseload and the complexities in adjudicating *Knight* petitions, it may be attractive both to defendants and to appellate courts to utilize the abbreviated § (Rule) 809.82 proceedings to reinstate direct appeal rights anytime a claim of ineffective assistance of appellate counsel is asserted.[19] However,

---

[19] We note that in *State v. Guerard,* 2004 WI 85, ¶ 17, ___Wis. 2d ___, 682 N.W.2d 12, the court of appeals sua sponte construed the defendant's petition for writ of habeas corpus alleging ineffective assistance of appellate counsel as a request to extend the time to file a notice of appeal or motion for postconviction relief. In doing so, the court of appeals was able to directly address the defendant's underlying claim of ineffective assistance of trial counsel without ever addressing whether the defendant's appellate counsel was ineffective. *State v. Guerard,* No. 02–2404–CR, unpublished slip op., ¶¶ 1, 9 (Wis. Ct. App. Oct. 1, 2003). However, in *Guerard,* the State never objected to the court of appeals' "end-run" around *Knight. Guerard,* ___Wis. 2d ___, ¶ 17 n.3, and thus waived the issue. As noted *supra,* the court of appeals in the present case allowed the State to argue the § (Rule) 809.82(2)/*Knight* issue, and this issue was therefore preserved for appeal in this court.

In short, this court reached the defendant's underlying substantive claims in *Guerard* because the State never objected to the court of appeals' utilization of § (Rule) 809.82(2) and failure to resolve the predicate ineffective assistance of appel-

while expeditiousness may often be desirous, celerity is no substitute for reasoned judicial analysis of significant legal issues.[20]

---

late counsel issue. Unlike *Guerard,* the State in the present case did raise the § (Rule) 809.82(2)/*Knight* issue at the court of appeals. Further, here the State raised the issue in its petition for review, and the issue was fully briefed by both parties before this court. As such, the present case is distinguishable from *Guerard,* where the § (Rule) 809.82(2)/*Knight* issue was not at issue because it was waived at the court of appeals and never raised or briefed before this court.

[20] While the dissent is correct that filing a habeas petition may result in greater delay, dissent, ¶ 79, what the dissent apparently fails to appreciate is that the determination of whether Evans's appellate counsel was ineffective is a necessary prerequisite to addressing Evans's substantive claims and deciding whether he is entitled to a new trial. Evans is not entitled to a new trial unless it is first established that his appellate counsel was deficient. The issue here is not merely one of form, that is, what document needs to be filed. Rather, the issue is one of substance. The dissent states that "[t]he court of appeals apparently frequently and *almost automatically grants* defendants extensions of time for filing a postconviction motion and appeal under Wis. Stat. § (Rule) 809.82(2) . . . ." Dissent, ¶ 80 (emphasis added). Therein lies the problem.

If a defendant seeks review of claims of circuit court error long after his direct appeal rights have expired (some of his claims having been previously raised) and asserts as a reason for the delay that his appellate counsel was ineffective, there must be a substantive determination that counsel was ineffective before the underlying claims of error can be addressed. Under *Knight,* the appropriate vehicle for addressing whether counsel was ineffective is a petition for habeas corpus filed in the court of appeals. Not only was the appropriate vehicle for making such a determination not utilized in this case, but more importantly, there was never actually a substantive determination that Evans's appellate counsel was ineffective.

¶ 57. In *Breier,* this court determined that the court of appeals erroneously exercised its discretion when it utilized § (Rule) 809.82(2) to schedule oral argument on a petition for a supervisory writ the day after the petition was filed, contrary to the time limits set forth in Wis. Stat. § (Rule) 809.51(2). *Breier,* 91 Wis. 2d at 834–37. We reasoned that "[t]o shortcut the procedure prescribed by the rules when no apparent reason for doing so exists, amounts to an abuse of discretion." *Id.* at 836. Here, well aware of our mandate in *Knight* that a claim of ineffective assistance of appellate counsel must be brought via a petition for habeas corpus, the court of appeals granted a § (Rule) 809.82(2) motion that was based on a claim of ineffective assistance of counsel, thereby eschewing the need to appoint a fact-finding referee and analyze important novel legal issues. The court of appeals utilized § (Rule) 809.82 to reinstate Evans's direct appeal rights four and a half years after his rights had lapsed without ever determining that his appellate counsel was deficient. In essence, the court of appeals allowed a procedural rule to obviate the need for determining the substantive

Also, while we are sensitive to the concurrence's concern over judicial resources, concurrence, ¶ 62, even addressing the substantive issues Evans raises at this point renders meaningless the procedure we prescribed in *Knight.* If this court were to ignore the issue of whether appellate counsel was ineffective and address every important issue of criminal law despite the fact that a determination as to whether the defendant's appellate counsel was ineffective was a logical and necessary predicate to reaching the underlying issues, claims of ineffective assistance of appellate counsel would cease to be substantive claims of constitutional dimension and would become merely a label utilized by litigants on their pleadings to ensure appellate review of stale and/or previously raised underlying claims of circuit court error.

issue of whether Evans's appellate counsel was deficient, a determination that was a necessary perquisite to adjudicating Evans's numerous, previously-raised claims of circuit court error.

¶ 58. "Discretion . . . requires that the decision be consonant with the purposes of the established law . . . ." *State ex rel. Plotkin v. DHSS,* 63 Wis. 2d 535, 545, 217 N.W.2d 641 (1974). The purpose of § (Rule) 809.82(2) is to provide a procedural mechanism whereby the times for doing acts prescribed by the rules of appellate procedure can be modified upon a showing of good cause. Section (Rule) 809.82(2) was not designed to serve as a vehicle to adjudicate substantive claims of constitutional dimension, such as claims of ineffective assistance of counsel. In *Knight,* we specifically established a uniform procedure for bringing and adjudicating claims of ineffective assistance of appellate counsel by stating that such claims *must* be brought via a petition for habeas corpus and expressly disavowing an alternative procedure. By granting Evans's § (Rule) 809.82(2) motion and reinstating his direct appeal rights when his motion was premised on a claim of ineffective assistance of appellate counsel, the court of appeals contravened the purpose of § (Rule) 809.82(2) and our decision in *Knight.* Therefore, its actions constitute an erroneous exercise of discretion.

¶ 59. As a § (Rule) 809.82(2) motion does not contemplate the resolution of substantive legal issues, it is ill suited to act as a vehicle for claims of ineffective assistance of appellate counsel, and utilizing it in such a fashion is incompatible with our decision in *Knight.* We reaffirm our holding in *Knight* that a claim of ineffective assistance of counsel *must* be brought via a petition for habeas corpus in the court of appeals. Utilizing § (Rule) 809.82(2), a procedural mechanism,

as a substitute for a *Knight* petition for habeas corpus, so as to avoid making a substantive determination that a defendant was denied the effective assistance of appellate counsel constitutes an erroneous exercise of discretion.[21] Therefore, we hold that the court of appeals erroneously exercised its discretion when it reinstated Evans's direct appeal rights by granting his § (Rule) 809.82(2) motion to extend the time for filing his direct appeal because the basis of the motion was a claim of ineffective assistance of appellate counsel.[22] As

[21] Evans argues that such a conclusion is contrary to our decision in *State v. Harris,* 149 Wis. 2d 943, 947 & n.5, 440 N.W.2d 364 (1989), wherein we opined that failure to allow the extension of a deadline to file an appeal under § (Rule) 809.82 when the defendant was deprived of counsel would implicate due process concerns because "a criminal defendant's right to appeal cannot be extinguished because of his attorney's incompetence . . . ." However, *Harris* was decided before we concluded in *Knight* that a petition for a writ of habeas corpus was the proper vehicle to challenge ineffective assistance of appellate counsel.

Our holding today does not implicate due process concerns because if a defendant files a *Knight* petition and it is determined that his appellate counsel was deficient, his direct appeal rights may be reinstated. Thus, a defendant's right to appeal will not be extinguished; on the contrary, a *Knight* petition provides the appropriate vehicle to determine if counsel was deficient so that a defendant's direct appeal rights *can* be reinstated. In addition, our decision in *Harris* did not involve ineffective assistance of appellate counsel; rather, the defendant timely filed an appeal but did not receive appointed representation because the clerk of court failed to send a copy of the postconviction notice to the SPD's office. *Harris,* 149 Wis. 2d at 945.

[22] Even if we were to conclude that the court of appeals can legitimately utilize § (Rule) 809.82(2) to adjudicate a claim for ineffective assistance of appellate counsel, we would nonethe-

such, we do not reach the other issues presented in this case. Evans remains free to file a *Knight* petition with the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 60. PATIENCE D. ROGGENSACK, J., did not participate.

¶ 61. N. PATRICK CROOKS, J. (*concurring*). In the present case, the majority correctly concludes that Evans inappropriately brought his motion claiming ineffective assistance of counsel using Wis. Stat. § (Rule) 809.82(2) (2001–02)[1]. The majority, however, then declines to address the remaining issues raised before this court. Majority op., ¶ 59. While I agree with the majority that Evans should have brought his ineffective assistance of counsel claim using a habeas

---

less conclude that the court of appeals erroneously exercised its discretion in granting Evans's motion because the court of appeals failed to set forth its reasoning in its order granting the motion. *McCleary v. State,* 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971). Given the numerous legal issues that would be involved in a habeas petition in this case, as well as the lack of testimony, other than unchallenged affidavits, we cannot conclude that the facts of record support the court of appeals' actions. *See id.*

[1] Unless otherwise indicated, all references to Wisconsin Statutes are to the 2001–02 edition. Wisconsin Stat. § 809.82(2) states, in relevant part, as follows:

(a) Except as provided in this subsection, the court upon its own motion or upon good cause shown by motion, may enlarge or reduce the time prescribed by these rules or court order for doing any act, or waive or permit an act to be done after expiration of the prescribed time.

(b) Notwithstanding the provisions of par. (a), the time for filing a notice of appeal or cross-appeal of a final judgment or order other than in an appeal under s. 809.30 or 809.32 may not be enlarged.

petition in accord with *State v. Knight,* 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992), I would not resolve this case based on the procedural issue alone. Instead, I would address the remaining issues in this case, especially the issue of the lesser-included offense jury instruction, which the court of appeals decided in favor of Evans in reversing his conviction.

¶ 62. The majority wastes limited judicial resources by deciding this case solely on the procedural issue, and failing to address the other issues presented in this case. The question involving the jury instruction is likely to be presented to this court again, and I would take the opportunity to clarify that issue now, and also to address the other issues raised and discussed in the court of appeals' opinion.

¶ 63. In its decision in this case, the court of appeals correctly set forth the applicable standard when deciding whether a jury should have been instructed on a lesser-included offense:

> "A challenge to a trial court's refusal to submit a lesser-included offense instruction presents a question of law which we review de novo. 'The submission of a lesser-included offense instruction is proper *only* when there exists reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense.' In determining the propriety of a defendant's request for a lesser included offense instruction, the evidence must be viewed in the light most favorable to the defendant and the requested instruction. Further, 'the lesser-included offense should be submitted only if there is a reasonable doubt as to some particular element included in the higher degree of crime.' 'If the court improperly fails to submit the requested lesser included offense to the jury, it is prejudicial error and a new trial must be ordered.' "

*State v. Evans,* No. 02–1869–CR, unpublished slip op.,

¶ 8 (Wis Ct. App. July 24, 2003) (quoting *State v. Foster,* 191 Wis. 2d 14, 23, 528 N.W.2d 22 (Ct. App. 1995) (citations omitted)).

¶ 64. I agree with the State that the court of appeals erred in holding that the circuit court, during the trial of Evans on the charge of attempted first-degree intentional homicide, should have granted Evans's request for a lesser-included offense jury instruction on first-degree recklessly endangering safety, as set forth in Wis. Stat. § 941.30(1). The decision of whether or not to give such an instruction turns on whether there was evidence presented that created reasonable doubt as to whether Evans intended to kill Devine. In this case, the evidence presented established that Devine was shot at by Evans at close range from four to six times. Devine was wounded in the left buttock, the upper and lower left leg, and the right bicep. Importantly, the evidence presented by a third-party eyewitness reasonably leads to the conclusion that Devine sustained the wound to his right bicep while shielding his head from the shooter's bullets.

¶ 65. The court of appeals improperly relied on a string of cases focusing on whether the victim was wounded in a vital part of his or her body. *Id.,* ¶¶ 10–15. *See also Hawthorne v. State,* 99 Wis. 2d 673, 299 N.W.2d 866 (1981); *Terrell v. State,* 92 Wis. 2d 470, 285 N.W.2d 601 (1979); and *State v. Leach,* 122 Wis. 2d 339, 363 N.W.2d 234 (Ct. App. 1984). Here, but for Devine's act of shielding himself with his right arm, he would have been shot in the head. Moreover, the State aptly points out that no evidence was presented that Evans was a marksman deliberately aiming with such precision that he intended to and did cause only non-fatal wounds. Given the facts of this case, the circuit court appropriately refused to give the jury the lesser-

included offense instruction. The facts do not lead to a conclusion that there was reasonable doubt on the element of intent. There were not reasonable grounds in the evidence both for acquittal on the attempted first-degree intentional homicide charge and conviction on the lesser charge.

¶ 66. Although I am in disagreement with the court of appeals' treatment of the lesser-included offense jury instruction issue, I agree with its resolution of the remaining issues. I agree that any error that may have been committed by the circuit court in refusing to admit the testimony of two witnesses who, it was claimed, would have provided an alibi for Evans was harmless error. Devine identified Evans as the shooter, and Evans himself admitted, in his written statement, to the shooting. *Evans,* ¶ 17. I also agree with the court of appeals' decision that Evans's voluntary statement to the police was properly admitted into evidence. *Id.,* ¶ 18. Moreover, the court of appeals correctly concluded that the circuit court did not err when it denied Evans's subpoena duces tecum for the detective who took his statement, since introduction of evidence concerning other statements taken by him would provide more confusion than clarity. *Id.,* ¶¶ 19–20. I further agree that the court of appeals was correct in its conclusion that a new trial should not be granted in the interest of justice pursuant to Wis. Stat. § 752.35.[2] *Id.,* ¶ 21. Finally, the court of appeals correctly decided that

---

[2] Wisconsin Stat. § 752.35 states, in relevant part, as follows:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and

Evans's request for post-conviction discovery was properly denied, because the evidence sought would not have changed the outcome of the trial. *Id.,* ¶¶ 22–24.

¶ 67. While it is appropriate to resolve whether Wis. Stat. § 809.82(2) was used correctly here, or whether the right procedure was to bring a habeas petition in accord with *State v. Knight,* the other issues raised in this case should also be resolved by this court. Precious judicial resources are wasted by the majority's failure to address those issues here and now.

¶ 68. For the foregoing reasons, I respectfully concur.

¶ 69. SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* Enough already! I get it. Defendants should use habeas to claim ineffective assistance of appellate counsel. If they do not, their claim is dismissed, and they have to start anew with a petition for a writ of habeas.

¶ 70. The defendant alleged ineffective assistance of appellate counsel, namely that counsel failed to proceed with the appeal based on circuit court errors that trial counsel had preserved. The majority opinion fixates on the issue of the necessity of claiming ineffective assistance of appellate counsel by a petition for a writ of habeas corpus pursuant to *State v. Knight,*[1] not by a Wis. Stat. § (Rule) 809.82(2) motion. As Justice Crooks's concurrence points out, because the court of appeals dismissed the defendant's habeas petition and instead addressed the defendant's § (Rule) 809.82(2)

---

may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial . . . .

[1] *State v. Knight,* 168 Wis. 2d 509, 484 N.W.2d 540 (1992).

motion, the majority opinion refuses to resolve the substantive issues in the case.

¶ 71. Yet in a case mandated this very day, *State v. Guerard*,[2] this court ignores the fact that the court of appeals sua sponte interpreted Guerard's petition for a writ of habeas corpus as a request to extend time under Wis. Stat. § (Rule) 809.82(2) to file a motion for direct appeal or postconviction relief, and extended the time for appeal or postconviction relief. Guerard alleged ineffective assistance of appellate counsel, namely failure to complete the appeal based on ineffective assistance of trial counsel.

¶ 72. On Guerard's postconviction motion, new appellate counsel alleged ineffective assistance of trial counsel in a *Machner*[3] hearing. The court of appeals and this court address the merits of Guerard's claim of ineffective assistance of trial counsel. Yet if we were to apply the *Evans* majority opinion to *Guerard,* neither the court of appeals nor the supreme court could address Guerard's substantive issues. I do not see a difference between this case and the *Guerard* case that justifies our reaching the merits of the substantive issues of ineffective assistance of trial counsel in *Guerard,* but not in this case.

¶ 73. The majority does not address Evans's substantive claims because the court of appeals never made a determination of whether Evans's appellate counsel was ineffective.[4] Yet, in *Guerard,* where this court addresses Guerard's substantive claims, the court of

---

[2] 2004 WI 85, ___ Wis. 2d ___, 682 N.W.2d 12.

[3] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (1979).

[4] Majority op., ¶ 56 n.20.

appeals never made a determination of whether Guerard's appellate counsel rendered ineffective assistance of counsel.[5]

¶ 74. The court of appeals acted under Wis. Stat. § (Rule) 809.82(2) in *Guerard*. Under the holding of the present case, the court of appeals cannot, under § (Rule) 809.82(2), extend the time for appeal or postconviction relief and cannot address substantive allegations of errors relating to the trial. Just what is the difference between *Guerard* and the present case that justifies this different result? A full explanation is, I think, due and owing to the litigants, the circuit courts, and the court of appeals.[6]

## I

¶ 75. I address first the procedural issue, Wis. Stat. § (Rule) 809.82(2) versus habeas corpus (*Knight*), that occupies the full attention of the majority opinion.

¶ 76. To say that the history and procedural posture of this case are convoluted and peculiar is a significant understatement. The case has extended over

---

[5] *Guerard,* 2004 WI 85, ¶ 17; majority op., ¶ 56 n.19.

[6] The majority opinion attempts to distinguish this case from the *Guerard* case by noting that the State did not object to the procedure in *Guerard* but in the present case objected to the procedure. Majority op., ¶ 56 n.19. So what, I say.

The same problem appears in both cases (as far as the majority opinion is concerned): The court of appeals never determined whether appellate counsel was ineffective. The court of appeals' finding on the ineffective assistance of appellate counsel is, according to the reasoning of the majority opinion, a predicate finding, and the failure of the court of appeals to make this finding is, under the majority opinion's reasoning, fatal and not waivable.

several years and has been before circuit courts and the court of appeals several times.

¶ 77. On March 11, 2002, Evans filed a Wis. Stat. § (Rule) 809.82(2) motion in the court of appeals. The court of appeals granted the motion on March 13, 2002, extending the time for filing his postconviction motion or notice of appeal, and the case proceeded in circuit court. Evans never got a hearing in circuit court; his motion in circuit court was summarily denied. On July 12, 2002, Evans filed his notice of appeal to the court of appeals. The State objected on September 2, 2002 to the court of appeals' extension of time granted in March 2002. The court of appeals allowed the State to brief the issue. After the State's objection, Evans filed a petition for writ of habeas corpus in the court of appeals. On November 6, 2002, the court of appeals denied Evans's habeas petition as premature and proceeded to address the appeal and the State's objection to the extension of time under § (Rule) 809.82(2). This court of appeals decision, dated July 24, 2003, is now before us.

¶ 78. The majority opinion concludes that the court of appeals, not the defendant, erred. The court of appeals erred in using the defendant's Wis. Stat. § (Rule) 809.82(2) motion instead of allowing the defendant to proceed on his habeas petition. Now the majority opinion holds that Evans must proceed by a habeas petition.

¶ 79. The State argues that because the defendant's direct appeal was not properly reinstated via a Wis. Stat. § (Rule) 809.82(2) motion, the court of appeals lacked jurisdiction or competency to entertain several allegations of circuit court error asserted by the defendant. The majority opinion apparently agrees with the State in the case at bar but ignores the jurisdictional issue in *Guerard*. In any event, the ma-

jority opinion suggests that the defendant may file a petition for a writ of habeas corpus again.[7] That means another two or so years in the judicial system before the defendant and the State will know whether the defendant is entitled to a new trial.

¶ 80. The court of appeals apparently frequently and almost automatically grants defendants extensions of time for filing a postconviction motion and appeal under Wis. Stat. § (Rule) 809.82(2), and the State generally does not object. That's the way defendants, the State, and the court of appeals seem to be doing appellate court business.[8] This procedure apparently fills a need. If it's working, then let it be, I say.

¶ 81. In keeping with the general rule that this court ordinarily does not review an exercise of discretion by the court of appeals,[9] I would not review the court of appeals' exercise of discretion relating to appellate practice in the court of appeals. I would treat this case just like the court treats the *Guerard* case.

¶ 82. In any event, I conclude that the court of appeals properly exercised its discretion in extending the defendant's time to file a postconviction motion and appeal in the present case. Wisconsin Stat. § (Rule) 809.82(2)(b) explicitly empowers the court of appeals to extend a defendant's time to file a postconviction mo-

---

[7] *See* majority op., ¶ 4.

[8] For cases noting that the court of appeals granted a criminal defendant's motion to extend time for filing a notice of appeal, see, *e.g., State v. Guerard,* 2004 WI 85, ¶ 17 n.3, ___ Wis. 2d ___, 682 N.W.2d 12; *State v. Smith,* 207 Wis. 2d 258, 266–67, 558 N.W.2d 379 (1997); *Biel v. Biel,* 130 Wis. 2d 335, 337, 387 N.W.2d 295 (Ct. App. 1986).

[9] *State v. Smythe,* 225 Wis. 2d 456, 462–63, 592 N.W.2d 628 (1999); *State v. McConnohie,* 113 Wis. 2d 362, 368–70, 334 N.W.2d 903 (1983).

tion and appeal under § (Rule) 809.30. The rule makes no exception for *Knight* claims, that is, for claims of ineffective assistance of appellate counsel. By judicial fiat the majority opinion reads a *Knight* exception into this simply stated, uncluttered rule.[10] The majority opinion apparently reads the *Knight* exception into the text of the rule because it concludes that the textual reading of the rule has consequences the majority concludes will be troublesome.[11]

¶ 83. There is no need to read this exception into Wis. Stat. § (Rule) 809.82(2)(b). The *Knight* case addresses the question of which court is the proper forum to hear ineffective assistance of appellate counsel claims, the circuit court or court of appeals. The *Knight* court answered the question: the court of appeals.

¶ 84. Here the defendant sought relief in the proper court, the court of appeals. The court of appeals concluded that even if habeas is the exclusive procedure for ineffective assistance of appellate counsel claims, little substantive difference exists between a petition for habeas and a motion under Wis. Stat. § (Rule) 809.82(2), and reaffirmed that its granting of the exten-

---

[10] The majority opinion concludes that the court of appeals erroneously exercised its discretion in ruling under Wis. Stat. § (Rule) 809.82 instead of requiring a defendant to use the *Knight* procedure. Majority op., ¶ 37 n.13. The court of appeals has, according to the majority opinion, erroneously exercised its discretion under § 809.82 because it erroneously interpreted its powers under § 809.82. Denying that this case involves an interpretation of § 809.82 or trying to recast the issue as one of discretion not connected to an interpretation of § 809.82 will not fool anybody about what the majority opinion is really doing.

[11] *See, e.g.,* majority op., ¶¶ 37, 56–59.

245

sion was reasonable in the present case.[12] Under either procedure, the court of appeals could have referred the matter for an evidentiary hearing if one was needed.[13]

¶ 85. I would hold the State to its waiver as this court does in *Guerard*.[14] This court frequently holds individuals to waiver.[15]

## II

¶ 86. The court of appeals proceeded to the merits of the defendant's and the State's arguments on defendant's appeal. I agree with the court of appeals' approach, and I turn to the merits of the substantive issues.[16]

---

[12] The question whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. Findings of fact will not be reversed unless they are clearly erroneous. The ultimate conclusion of whether counsel's conduct violated the defendant's right to effective assistance of counsel is a question of law for an appellate court to determine independently of other courts. *State v. Smith*, 207 Wis. 2d 258, 266–67, 558 N.W.2d 379 (1997).

[13] A former defense counsel's affidavit in the present case supported the defendant's factual assertions about the conduct of defense counsel on appeal. Although often a claim of ineffective assistance of trial or appellate counsel requires a factfinding hearing, such a hearing is not always required to grant the claim. *See, e.g., Smith*, 207 Wis. 2d at 271, 275, 282 (*Machner* hearing on ineffectiveness of trial counsel not necessary under the facts of the case; supreme court determines deficient performance and prejudice to the defendant).

[14] 2004 WI 85, ¶ 17 n.3.

[15] *See, e.g., Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 3, ___ Wis. 2d ___, 681 N.W.2d 190.

[16] *See also Guerard*, 2004 WI 85 (in which the court proceeds to the merits of the case).

¶ 87. With regard to the conviction for attempted first-degree homicide, the defendant asserted that the circuit court's failure to give the defendant's requested lesser-included instruction constituted reversible error. After reviewing the applicable case law regarding both when a lesser-included instruction must be given and shooting at a non-vital part of the victim's body, the court of appeals concluded that on the basis of this record the lesser-included instruction should have been given. The court of appeals reversed the conviction for attempted first-degree homicide. I agree with the reasoning of the court of appeals; I do not agree with Justice Crooks's concurrence on this substantive issue.

¶ 88. With regard to the conviction for first-degree reckless injury, I disagree with the court of appeals. The court of appeals refused to reverse the conviction for first-degree reckless injury (except to require resentencing).

¶ 89. The court of appeals never decided whether the circuit court erred in excluding defense witnesses who would have testified that the defendant was with them at or near the time of the shooting. This testimony would have corroborated the defendant's account of his whereabouts.

¶ 90. Upon examination of the record I conclude that the excluded testimony was relevant and necessary to the defendant's case and the State's interest in excluding the evidence failed to outweigh the defendant's constitutionally protected interest in presenting a defense.[17] I therefore conclude that the circuit court erred in excluding the testimony.

---

[17] The admission of evidence is generally reviewed for erroneous exercise of discretion. *State v. Guzman,* 2001 WI App 54, 241 Wis. 2d 310, 624 N.W.2d 717. Whether the exclusion of evidence denies an accused the right to present a defense is a

¶ 91. The circuit court concluded that any error in excluding the testimony was harmless error. This court applies the *Chapman* standard for harmless error. The standard is "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[18]

¶ 92. Under the *Chapman* standard, courts inquire into the nature of all the evidence heard to assess whether the error in excluding evidence was harmless beyond a reasonable doubt. As the *Chapman* court stated, a court cannot give too much emphasis to "overwhelming evidence" of guilt.[19] The *Chapman* standard is not a sufficiency of evidence test.

¶ 93. This court has posited guidelines for assessing whether an error was harmless.[20] A reviewing court should consider a variety of factors, including but not limited to the frequency of the error, the nature of the State's case, the nature of the defense, the importance of the erroneously included or excluded evidence to the prosecution's or defense's case, the presence or absence of evidence corroborating or contradicting the erroneously included or excluded evidence, whether errone-

---

question of constitutional due process and is determined by this court. *See State v. St. George*, 2002 WI 50, ¶¶ 16, 38, 52, 252 Wis. 2d 499, 643 N.W.2d 777.

[18] *Chapman v. California*, 386 U.S. 18, 24 (1967), *reh'g denied*, 386 U.S. 987 (1967) (internal quotations omitted).

[19] *Chapman*, 386 U.S. at 23.

[20] *See, e.g., State v. Billings*, 110 Wis. 2d 661, 668–69, 329 N.W.2d 192 (1983).

ously admitted evidence merely duplicates untainted evidence, and the overall strength of the prosecution's case.[21]

¶ 94. Upon examining the record and applying these guidelines I conclude that the error was not harmless beyond a reasonable doubt.

¶ 95. For the reasons set forth, I dissent. I would reverse the convictions and remand for a new trial.

¶ 96. I am authorized to state that Justice ANN WALSH BRADLEY joins part I of this opinion.

---

[21] *See, e.g., State v. Norman,* 2003 WI 72, ¶ 48, 262 Wis. 2d 506, 664 N.W.2d 97.